People v Faulk (2020 NY Slip Op 04178)





People v Faulk


2020 NY Slip Op 04178


Decided on July 22, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 22, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JEFFREY A. COHEN
COLLEEN D. DUFFY
FRANCESCA E. CONNOLLY, JJ.


2014-11614
 (Ind. No. 140/13)

[*1]The People of the State of New York, respondent,
v
Richard Faulk, appellant.


Carol E. Castillo, East Setauket, NY, for appellant.
Timothy D. Sini, District Attorney, Riverhead, NY (Grazia DiVincenzo of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Richard Ambro, J.), rendered November 17, 2014, convicting him of burglary in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (John J. Toomey, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is affirmed.
The defendant was convicted of burglary in the second degree arising from an incident that occurred on January 7, 2013, at a residence located on Lewin Farms in Calverton. At a suppression hearing, the officer who arrested the defendant testified that on the date of the incident, he was dispatched to the intersection of Route 25A and Hulse Landing, which was located approximately one mile from Lewin Farms, with respect to "a complainant who had a subject in custody." When the arresting officer arrived at the scene, he observed the defendant surrounded by approximately four to five men, including the complainant, who were shouting in Spanish. The complainant, who spoke English, told the arresting officer that "they just caught somebody trying to break into one of the houses" on Lewin Farms. Another officer arrived at the scene and, at that point, the arresting officer separated the defendant from the other individuals. The arresting officer placed the defendant's backpack on top of the trunk of the patrol car, and then asked the defendant, who was leaning against the rear bumper of the patrol car, for his name and identification. The defendant was unable to produce identification, but told the arresting officer his name. The arresting officer then ran a warrant check on the defendant's name, which revealed that there was an outstanding warrant for the defendant for a parole violation. The arresting officer then placed the defendant under arrest. In a search incident to his arrest, the arresting officer recovered from the defendant's pants pocket, among other items, a gold necklace, which he then placed inside the defendant's backpack. The arresting officer transported the defendant to the police precinct, and, approximately 1½ hours later, the arresting officer learned that the defendant was going to be charged with burglary. At the hearing, the defendant testified that the arresting officer recovered his cell phone and wallet from his pants pockets, and that the necklace, which he claimed belonged to him, was inside his backpack.
On a motion by a defendant to suppress physical evidence, "the People have the burden of going forward to show the legality of the police conduct in the first instance" (People v Whitehurst, 25 NY2d 389, 391 [emphasis omitted]; People v Worrell, 170 AD3d 1048, 1050). The defendant bears the ultimate burden of proving that the evidence should not be used against him (see People v Berrios, 28 NY2d 367, 367; People v Worrell, 170 AD3d at 1050). Further, the credibility determinations of a hearing court following a suppression hearing are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record (see People v Guzman, 175 AD3d 564, 564; People v Watson, 163 AD3d 855, 856-857; People v Casey, 149 AD3d 770, 771). "In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity. The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality. The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion. The third level permits a police officer to forcibly stop and detain an individual. Such a detention, however, is not permitted unless there is a reasonable suspicion that an individual is committing, has committed, or is about to commit a crime. The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime" (People v Karagoz, 143 AD3d 912, 913-914 [internal quotation marks omitted]; see People v De Bour, 40 NY2d at 223).
As an initial matter, the defendant failed to preserve for appellate review his contentions that the arresting officer was not justified in conducting a warrant check, and that the arresting officer lacked reasonable suspicion to detain him during the warrant check. The defendant did not raise, at the suppression hearing or during the trial, the specific contentions he now raises (see CPL 470.05[2]; People v Baez, 175 AD3d 553, 555; People v Taylor, 120 AD3d 519, 520). In any event, these contentions are without merit. The testimony adduced at the hearing demonstrated that the arresting officer was justified in asking the defendant for his name and, after the defendant was unable to provide identification, in conducting a warrant search. There is no support in the record for the defendant's contention that the arresting officer's conduct exceeded a level one request for information (see People v Tejada, 270 AD2d 655, 656; see also People v Merritt, 96 AD3d 1169, 1170). Furthermore, the record does not support the defendant's additional contention that he was detained while the arresting officer conducted the warrant check (see People v Small, 156 AD3d 820, 822-823; People v Bolta, 96 AD3d 773, 774; People v Shankle, 37 AD3d 742, 743). Moreover, we discern no basis to disturb the hearing court's determination to credit the arresting officer's testimony that the necklace was recovered from the defendant's pants pocket, and not the defendant's backpack (see People v Moore, 166 AD3d 654, 654; People v Rampersad, 158 AD3d 727, 728). Thus, the necklace seized by the arresting officer incident to the defendant's lawful arrest for a parole violation warrant was proper (see People v White, 173 AD3d 781, 781; People v Burris, 164 AD3d 821, 823). Accordingly, we agree with the hearing court's determination to deny that branch of the defendant's omnibus motion which was to suppress physical evidence.
Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel based on his counsel's failure to move to reopen the suppression hearing. On this record, the defendant failed to demonstrate "the absence of strategic or other legitimate explanations" for counsel's shortcoming (People v Rivera, 71 NY2d 705, 709; see People v Caban, 5 NY3d 143, 152).
The defendant waived his contention that the County Court erred with respect to the seating of prospective juror number 14 as the 12th juror, and the seating of prospective jurors numbers 16 and 20 as alternates, inasmuch as defense counsel expressly consented to the seating of those prospective jurors (see People v Arevalo, 168 AD3d 1091, 1091; People v Driver, 154 AD3d 958, 959). Contrary to the defendant's contention, the seating of those jurors did not constitute a mode of proceedings error (see People v Mack, 27 NY3d 534, 541; People v Carew, 167 AD3d 1032, 1032).
The defendant's contention that the evidence was legally insufficient to support his conviction of burglary in the second degree is without merit. Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally [*2]sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contentions regarding the County Court's determination to grant the jury's request, made during deliberations, for a magnifying glass to examine the subject necklace are partially unpreserved for appellate review (see CPL 470.05[2]). In any event, inasmuch as the magnifying glass was used for a permissible purpose, the court did not improvidently exercise its discretion in granting the jury's request (see People v Brown, 277 AD2d 972, 972; People v Brown, 216 AD2d 737, 738; People v Moody, 195 AD2d 1016, 1017).
The defendant's contention that the County Court impermissibly allowed the jurors to take notes during the trial without adequate instructions is unpreserved for appellate review (see People v Louisias, 29 AD3d 1017, 1020; People v Taylor, 17 AD3d 174, 174-175, affd 62 AD3d 1063). In any event, the court providently exercised its discretion in allowing the jurors to take notes during the trial, and, contrary to the defendant's contention, its instructions "adequately conveyed the substance of the cautions set forth by the Court of Appeals in People v Hues (92 NY2d 413, 419)" (People v Louisias, 29 AD3d at 1020).
The defendant's contention that the County Court erred in denying his application to charge criminal trespass in the second and third degrees as lesser included offenses of burglary in the second degree is without merit. "To be entitled to a charge on a lesser-included offense, a defendant must establish that (1) it was impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct, and (2) there is a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (People v Stevens, 171 AD3d 1106, 1108; see CPL 300.50[1]; People v James, 11 NY3d 886, 888; People v Lowery, 127 AD3d 1109, 1110). The defendant established the first prong of the test. However, viewing the record in the light most favorable to the defendant (see People v Martin, 59 NY2d 704, 705; People v Stevens, 171 AD3d at 1108; People v Cherry, 163 AD3d 706, 708), there was no reasonable view of the evidence to support a finding that the defendant committed the lesser offenses but not the greater offense.
We also agree with the County Court's denial of the defendant's motion to preclude the People from introducing certain expert testimony and evidence regarding a shoeprint found inside the home that was burglarized based on the People's alleged failure to timely disclose a trace evidence report prepared by the Office of the Medical Examiner Crime Laboratory. The People promptly turned over the report to the defense upon receipt and, as the court correctly concluded, the defendant was afforded a "meaningful opportunity to prepare for cross-examination" of the People's expert witness (People v Thomas, 12 AD3d 383, 384; see People v Fuller, 165 AD3d 1163, 1165). Moreover, even if "the People failed to timely disclose the report, there was no showing of undue prejudice or bad faith on the part of the People which would warrant the extreme sanction of preclusion" (People v Jenkins, 284 AD2d 550, 551, affd 98 NY2d 280; see People v Fuller, 165 AD3d at 165).
The defendant contends that the County Court's Molineux ruling (see People v Molineux, 168 NY 264), was improper and that the People should not have been permitted to elicit testimony from the arresting officer regarding his parole violation warrant. "Evidence of uncharged crimes is inadmissible where its only purpose is to show bad character or propensity towards crime" (People v Arafet, 13 NY3d 460, 464-465; see People v Henry, 173 AD3d 900, 901). "On the other hand, evidence relevant to prove some fact in the case, other than the defendant's criminal propensity, is not rendered inadmissible simply because it may also reveal that the defendant has committed other crimes" (People v Allweiss, 48 NY2d 40, 46-47; see People v Young, 168 AD3d 771, 772). Here, the arresting officer's testimony that there was an outstanding warrant for the defendant's arrest for a parole violation was relevant to complete the narrative regarding the reason [*3]why the defendant was placed under arrest before any investigation into the burglary had taken place (see People v Henry, 173 AD3d at 901; People v Springs, 156 AD3d 914; People v Johnson, 45 AD3d 606; People v Campbell, 7 AD3d 409, 410). Further, the probative value of the evidence outweighed its potential for undue prejudice to the defendant (see People v Henry, 173 AD3d at 901; People v Hankerson, 165 AD3d 1285, 1287; People v Springs, 156 AD3d at 915), and "the court provided the jury with appropriate limiting instructions immediately after the challenged testimony was elicited" (People v Johnson, 45 AD3d 606).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are without merit.
DILLON, J.P., COHEN, DUFFY and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court