Eaddy v Tavarez (2025 NY Slip Op 25205)

[*1]

Eaddy v Tavarez

2025 NY Slip Op 25205

Decided on September 8, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 8, 2025
Supreme Court, Kings County

Shanique Eaddy, Plaintiff,

against
Jose Tavarez, TCB LIMO CORP and AMIDU SILLAH, Defendants.

Index No. 524917/2019

The Hamel Law Form, New York City (Bill G. Lomuscio of counsel), for plaintiff
Nicoletti Spinner Ryan Gulino Pinter LLP, New York City (David H. Knel of counsel), for defendants Jose Tavarez & TCB Limo Corp.
McGiff Halverson Dooley Nador P.C., Patchogue (Kevin P. Connolly of counsel), for Defendant Amidu Sillah

Aaron D. Maslow, J.

Background
Plaintiff Shanique Eaddy commenced this action seeking to recover for alleged injuries resulting from an April 8, 2019 motor vehicle accident in which she was a passenger in the vehicle owned and operated by Defendant Amidu Sillah. It was asserted that said vehicle collided with the vehicle operated by Defendant Jose Tavarez and owned by Defendant TCB Limo Corp. The collision occurred in Manhattan at the intersection of Seventh Avenue and 125th Street, controlled by a traffic light.
The matter was assigned to this Court for trial last week. As is the custom of this Court, the attorneys for the parties were requested to submit a list of proposed jury charges prior to the trial commencing. Doing such enables the Court to begin to prepare the jury charges and provides it with an inkling of potential procedural and substantive issues. As a trial progresses, the attorneys may supplement the list of proposed post-trial charges. A formal charge conference is held after the close of testimony and prior to closing statements. Having the proposed charges from the parties in advance of trial facilitates efficiency in conducting the charge conference.
Plaintiff included in her proposed liability phase jury charges PJI 1:13C (pre-trial note-taking instructions) and PJI 1:25B (post-trial usage of notes during deliberations). Thus, Plaintiff sought to have the jury be permitted to take notes during the trial.

Discussion
In a landmark decision in New York, the Court of Appeals in People v Hues (92 NY2d 413 [1998]), sanctioned the propriety of juror note-taking during trial. In an expansive decision the Court laid out the benefits and drawbacks of permitting jurors to take notes during trial. It held, "[A] trial court—while not obligated to do so—has the discretion to permit note-taking by jurors during a trial. If a trial court determines that a particular case warrants note-taking, the court can, sua sponte, instruct jurors that they are permitted to take notes during the trial." (Id. at 419.) The Court did, however, caution, "This discretion, however, must be tempered, in light of the potential perils that note-taking can present during trial. Preliminary cautionary instructions should be given with respect to note-taking and the use of notes. The instructions should also be repeated at the conclusion of the case as part of the court's charge prior to the commencement of jury deliberations." (Id.)
Subsequently, the Appellate Divisions had to deal with criminal defendants' objections to note-taking. The consensus appears to be that so long as adequate instructions are provided to the jury, the practice of permitting jury note-taking is permissible despite defendants' objections (see, e.g., People v Faulk, 185 AD3d 953, 957 [2d Dept 2020]); People v Gaillard, 162 AD3d 1205 [3d Dept 2018]; People v Egan, 6 AD3d 1203 [1st Dept 2004]).
There have also been decisions where the Appellate Division sustained a trial court's refusal to allow jury note-taking in a criminal trial (see, e.g., People v Thornton, 4 AD3d 561, 563 [3d Dept 2004]; People v Saunders, 309 AD2d 1063, 1064 [3d Dept 2003] ["since this trial was neither long nor complex, we would find no abuse of the court's discretion in this regard"]; People v Robinson, 191 AD2d 595, 597 [2d Dept 1993]; People v Vaccarella, 177 AD2d 990, 990-991 [4th Dept 1991] ["important policy reasons why a court should not allow a juror to take notes in a relatively simple case"]).
In researching the issue of note-taking by jurors, this Court has encountered practically no reported appellate or trial court decisions on the civil side. In a complex matter, the First Department rejected a claim of jury confusion resulting from consolidation of multiple claims because, in part, "The court also implemented other management devices to alleviate and limit [*2]any potential juror confusion, such as providing the jurors with notebooks for taking notes, to assist them in recording and distinguishing the evidence in each case" (Matter of New York City Asbestos Litig., 121 AD3d 230, 245 [1st Dept 2014]). In another consolidation situation, note-taking was permitted in McCloskey v A.O. Smith Water Prods. (2014 WL 4311725 [Sup Ct, NY County 2014]).
No reported trial level decision explains why note-taking was prohibited. In a brief order, the Court in Carter v BMC-HOJO, Inc. (2017 WL 7693171 [Sup Ct, Orange County 2017]) conclusorily stated, "The plaintiff's application to permit jurors to take notes is denied. The Court, in its discretion, does not permit note-taking" (id. *1).
Faced with the plaintiff's desire to have the jury take notes during trial, this Court considered the matter and elected not to permit it. There are too many pitfalls.
A fact-finder's assessment of a witness's credibility includes being able to observe multiple factors including expression, unconscious gestures, fidgeting, hand movements, blushing, grinning, and tearing (see People v Cintron, 75 NY2d 249, 272 [1990, Alexander, J., concurring]). Assiduous note-taking prevents a juror from focusing on the witness testifying. Also, unskilled note-takers might struggle to record some testimony so much so that they completely disregard other portions of testimony (see People v DiLuca, 85 AD2d 439, 445 [2d Dept 1982]). In doing so, jurors might focus on irrelevant testimony and lose focus on the crucial facts at issue.
Jurors are enjoined, "At times during the trial, an attorney may object to a question or to the introduction of an exhibit or make motions concerning legal questions that apply to this case. Arguments in connection with objections or motions sometimes are made outside the presence of the jury. Any ruling I make will be based solely on the law and therefore you must not conclude from any ruling or from anything I say during the trial that I favor any party to this lawsuit." (PJI 1:4.) Yet the potential for jurors to spend time recording objections and court rulings is all too present.
Finally, the use of notes during post-trial jury deliberations is fraught with all sorts of potential problems. The Court can foresee arguments over what a witness testified to between those jurors who took notes ostensibly accurate and those who did not. Those who did not might take umbrage at a note-taking juror's insistence that she accurately recorded the testimony. This can only lead to unnecessary tension in the jury room.
Or indeed, there might not be acrimony and a non-note-taking juror simply acquiesces to a note-taking juror's recordations even though the former truly believes her recollection is more accurate. In fact, note-taking might inhibit juror requests for readbacks when jurors do not agree on their recollections. However, it is one's recollection that controls — not the notes (see PJI 1:25B).
Informing a jury, "Because the notes may be inaccurate or incomplete, they may not be given any greater weight than your independent recollection" (PJI 1:25B) will be observed more [*3]in the breach than in actuality by a juror who has taken notes.
The instant case is quite simple. No claim is made that the plaintiff was comparatively liable. Liability boils down to which driver, if any, was responsible for causing the accident — were the drivers negligent and was any negligence a proximate cause of the accident? Who drove through a red light? The number of witnesses is minimal: the plaintiff and potentially two drivers. This trial does not involve complex issues such as asbestos contamination claimed by multiple plaintiffs (cf. Matter of New York City Asbestos Litig., 121 AD3d 230).

Conclusion
In light of the simplicity of the issues, the Court finds that any benefits of jury note-taking are outweighed by the risks. The Court will inform the attorneys that in the exercise of its discretion, jury note-taking will not be permitted.
Dated: September 8, 2025