People v Wright-Hale (2020 NY Slip Op 01092)





People v Wright-Hale


2020 NY Slip Op 01092


Decided on February 13, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
FRANCESCA E. CONNOLLY, JJ.


2018-07022
 (Ind. No. 880/16)

[*1]The People of the State of New York, respondent,
v
Samuel J. Wright-Hale, appellant.


Robert DiDio, Kew Gardens, NY, for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Nancy Fitzpatrick Talcott, and Antara D. Kanth of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Gene Lopez, J.), rendered May 16, 2018, convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Steven Paynter, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
ORDERED that the judgment is affirmed.
We agree with the Supreme Court's determination to deny suppression of a gun recovered from the defendant's vehicle. At the suppression hearing, the arresting officer testified that on the morning of November 8, 2015, he and his partner went to a hotel in Queens in response to a 911 emergency telephone call reporting that a man was banging on a hotel room door with a firearm. When the arresting officer arrived at the scene, there were approximately four police officers already present, who were speaking with the defendant in the hallway outside the subject hotel room door. The defendant was not handcuffed and the officers' guns were not drawn. The arresting officer proceeded into the hotel room and spoke with the 911 callers, whom he learned were the defendant's former girlfriend and her current boyfriend. They informed the arresting officer that the defendant was "known to carry" a gun. The arresting officer returned to the hallway and asked the defendant for permission to search his vehicle. At the hearing, the arresting officer testified that he had assumed that the police officers who first arrived on the scene had already frisked the defendant. The defendant consented to the search, gave the arresting officer the keys to his vehicle, and told the officer that his "Ford Mustang" was parked across the street. Upon searching the trunk of the vehicle, the arresting officer found a shoe box containing a gun.
Contrary to the defendant's contention, the arresting officer had a "founded suspicion that criminality [was] afoot," and, therefore, was justified in asking the defendant for his consent to search the vehicle (People v Williams, 300 AD2d 684, 684; see People v Battaglia, 86 NY2d 755, 756; People v Blanco, 67 AD3d 923, 923-924). Furthermore, the evidence presented at the suppression hearing established that the defendant voluntarily consented to the search (see People v Newsom, 155 AD3d 768, 777; People v Xochimitl, 147 AD3d 793, 794, affd 32 NY3d 1026; People v Quagliata, 53 AD3d 670, 671). The defendant cooperated with the officers before [*2]consenting to the search and the record is bereft of any evidence that the defendant's consent to the search was coerced (see People v Evans, 157 AD3d 716, 716; People v Burno, 130 AD3d 747, 747). The failure of the arresting officer to inform the defendant of his right to refuse consent and the presence of a number of police officers at the scene do not compel the conclusion that his consent was involuntary (see People v Gonzalez, 39 NY2d 122, 130; People v Evans, 157 AD3d at 717). Finally, since the search of the defendant's vehicle and his arrest were lawful, his subsequent statements to the police cannot be deemed the fruit of the poisonous tree subject to the exclusionary rule (see People v Foster, 153 AD3d 853, 854; People v John, 119 AD3d 709, 710).
Accordingly, we agree with the determination of the hearing court denying those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
DILLON, J.P., COHEN, MILLER and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court