People v Swift (2020 NY Slip Op 04066)





People v Swift


2020 NY Slip Op 04066


Decided on July 17, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 17, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, CURRAN, BANNISTER, AND DEJOSEPH, JJ.


641 KA 18-01265

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
BRIHEEM SWIFT, DEFENDANT-APPELLANT. 






DAVID J. PAJAK, ALDEN, FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered March 30, 2018. The judgment convicted defendant upon his plea of guilty of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that County Court erred in refusing to suppress the handgun seized from a vehicle being driven by defendant following a traffic stop. We affirm.
The evidence at the suppression hearing established that a police officer stopped the vehicle that defendant was driving after observing that its rear driver's side window was tinted in violation of Vehicle and Traffic Law § 375 (12-a) (b) (3). After speaking with defendant and having him step out of the vehicle, the police officer (first officer) learned that another police officer had observed a handgun behind the driver's seat on the floor of the passenger compartment through the partially lowered rear driver's side window. After restraining defendant, the first officer confirmed, through the partially open window, that there was a gun on the floor behind the driver's seat. After the stop, the first officer confirmed that the window tint was unlawful by using his personal tint meter. The handgun was thereafter seized from the vehicle.
We reject defendant's contention that the vehicle stop was invalid. It is well settled "that the police may lawfully stop a vehicle for a traffic infraction of excessively tinted windows" (People v Collins, 105 AD3d 1378, 1379 [4th Dept 2013], lv denied 21 NY3d 1003 [2013]; see People v Estrella, 48 AD3d 1283, 1285 [4th Dept 2008], affd 10 NY3d 945 [2008], cert denied 555 US 1032 [2008]; People v Bacquie, 154 AD3d 648, 649 [2d Dept 2017], lv denied 30 NY3d 1113 [2018], cert denied — US — , 139 S Ct 102 [2018]). Here, as noted, the first officer's testimony established that he observed an excessively tinted window in violation of Vehicle and Traffic Law § 375 (12-a) (b) (3) and that he measured the tint after the stop, thereby confirming that it was excessive. The court was entitled to credit the first officer's testimony under these circumstances and properly concluded that the initial stop of the vehicle was justified (see generally People v Prochilo, 41 NY2d 759, 761 [1977]; People v Mills, 137 AD3d 1690, 1691 [4th Dept 2016], lv denied 27 NY3d 1136 [2016]).
Defendant contends that the court, in determining that the vehicle stop was lawful, improperly relied on inadmissible photographs of the vehicle that were presented by the People. Specifically, he argues that those photographs were improperly admitted in evidence because the People did not lay an adequate foundation establishing their authenticity. We reject that contention. "With respect to photographs, [courts] have long held that the proper foundation should be established through testimony that the photograph accurately represent[s] the subject [*2]matter depicted' " (People v Price, 29 NY3d 472, 477 [2017], quoting People v Byrnes, 33 NY2d 343, 347 [1974]). To that end, " [r]arely is it required that the identity and accuracy of a photograph be proved by the photographer. Rather, [because] the ultimate object of the authentication requirement is to insure the accuracy of the photograph sought to be admitted into evidence, any person having the requisite knowledge of the facts may verify' . . . that the photograph has not been altered" (id. [emphasis added]). Here, the People laid a proper foundation with respect to the photographs through the testimony of defendant's girlfriend, who testified to her familiarity with the vehicle in question and who acknowledged that the People's photographs accurately depicted the vehicle in question. She also testified that the photographs appeared to show some tinting of the vehicle's windows (see People v Jordan, 181 AD3d 1248, 1249-1250 [4th Dept 2020]). Thus, the court properly considered the People's photographic exhibits when it decided to credit the first officer's testimony that the vehicle's rear driver's side window was excessively tinted.
Contrary to defendant's further contention, the credible testimony at the suppression hearing supported the determination that the police lawfully viewed the handgun on the floor of the vehicle through the partially lowered rear driver's side window. We conclude that, having lawfully stopped the vehicle, the police were permitted to seize the handgun in the vehicle because it was observed in plain view on the floor behind the driver's seat of the vehicle (see People v East, 119 AD3d 1370, 1371 [4th Dept 2014]; People v Woods, 303 AD2d 1031, 1031-1032 [4th Dept 2003]; see generally People v Sanders, 26 NY3d 773, 777 [2016]).
We have considered defendant's remaining contentions and conclude
that none warrants reversal or modification of the judgment.
Entered: July 17, 2020
Mark W. Bennett
Clerk of the Court