People v Biggs (2022 NY Slip Op 05328)

People v Biggs

2022 NY Slip Op 05328

Decided on September 28, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 28, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
VALERIE BRATHWAITE NELSON
REINALDO E. RIVERA
PAUL WOOTEN
DEBORAH A. DOWLING, JJ.

2020-05377
 (Ind. No. 1764/16)

[*1]The People of the State of New York, respondent,
v
Andre E. Biggs, appellant.

Law Office of Joseph Z. Amsel, PLLC, New York, NY, for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Roni C. Piplani, and Adarna De Frietas of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Charles S. Lopresto, J.), rendered December 11, 2019, convicting him of criminal possession of a weapon in the second degree (two counts), criminal possession of marijuana in the fourth degree, and unlawful possession of marijuana, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Steven W. Paynter, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and to controvert a search warrant. The appeal also brings up for review the denial (Steven W. Paynter, J.), after a hearing (Arthur J. Cooperman, JHO), of that branch of the defendant's separate motion which was to suppress physical evidence.
ORDERED that the appeal from so much of the judgment as convicted the defendant of criminal possession of marijuana in the fourth degree and unlawful possession of marijuana is dismissed as academic; and it is further,
ORDERED that the judgment is affirmed insofar as reviewed.
The defendant's conviction arose out of a traffic stop on 201st Street in Queens, near its intersection with 112th Avenue, at approximately 9:00 p.m. on July 7, 2016. Officer Kenneth Sepulveda testified at a suppression hearing that he and Sergeant Javier Rodriguez were on patrol in an unmarked vehicle when they observed a black Nissan Altima with excessively-tinted windows. Officer Sepulveda and Sergeant Rodriguez followed the Nissan for a short distance with the windows of their unmarked vehicle down, and Officer Sepulveda detected a strong odor of marijuana emanating from the Nissan. Officer Sepulveda and Sergeant Rodriguez stopped the Nissan and exited their vehicle, and Officer Sepulveda approached the driver's side of the Nissan and Sergeant Rodriguez approached the passenger's side. The defendant was the sole occupant of the Nissan when it was stopped, seated in the driver's seat. The defendant was unable to produce a driver license at the stop. Officer Sepulveda detected a "very strong" smell of marijuana while standing alongside the Nissan, and using a flashlight aimed into the interior of the vehicle, observed marijuana crumbs on the floor mat behind the driver's seat. The defendant exited the vehicle to be frisked while Sergeant Rodriguez searched the Nissan's interior and trunk. The defendant was ultimately [*2]arrested at the scene and taken to the 113th police precinct station house.
The Nissan was impounded. The defendant could not drive it without a driver license, and no third person was present to drive the vehicle from the scene. Officer Sepulveda testified that he conducted an inventory search of the Nissan at the precinct station house. He testified that he removed and vouchered the marijuana crumbs during the search, but still detected a strong odor of marijuana coming from the vehicle's center console. Investigating further from the back seat, he noticed a small crack in the rear of the center console, directed his flashlight beam into the crack, pushed down on some plastic, observed a variety of items, including marijuana, United States currency, a metal rod, and a metal box, and concluded that the center console contained a hidden compartment. Upon speaking with a supervisor, Officer Sepulveda suspended his inventory search in order to obtain a search warrant. Later, with a warrant, police officers recovered from the hidden compartment in the center console more than two ounces of marijuana, a loaded firearm, and $290 of currency. They also recovered from underneath the spare tire in the trunk a black plastic grocery bag containing marijuana and $8,000 of currency.
The defendant moved prior to trial contesting the lawfulness of the initial traffic stop and to controvert the search warrant, and to suppress the physical evidence recovered from the Nissan. The Supreme Court denied the motions after conducting a pretrial suppression hearing.
The defendant argues that the Supreme Court erred by denying his motion to suppress physical evidence, on the ground that Officer Sepulveda's hearing testimony was patently incredible, tailored to nullify constitutional objections, and legally insufficient to establish the lawfulness of the traffic stop. The defendant's challenges to the lawfulness of the traffic stop and the credibility of Officer Sepulveda are preserved for appellate review. However, more specific appellate arguments now advanced on appeal pertaining to Officer Sepulveda's tint test training or experience, the time of the initial stop, the timing of the tint test at the precinct, and the presence of side mirrors on the Nissan are unpreserved for appellate review (see CPL 470.05[2]), and we decline to reach them in the exercise of our interest of justice jurisdiction. Moreover, the failure of the defendant's counsel to preserve those discrete issues for appellate review does not, on this record, constitute ineffectiveness of counsel.
Excessive window tint is a violation of Vehicle and Traffic Law § 375(12-a)(b), and was among the initial charges against the defendant. "No person shall operate any motor vehicle upon any public highway, road or street: . . . the front windshield of which is composed of, covered by or treated with any material which has a light transmittance of less than seventy percent," subject to certain exceptions not applicable here (id. § 375[12-a][b][1]). Here, Officer Sepulveda testified at the suppression hearing that he could tell the window tints were too dark because he could not see into the Nissan and that, while following the Nissan, he detected a strong odor of marijuana which he believed to have emanated from the Nissan. Officer Sepulveda also testified that he had been given marijuana training at the police academy and that he had been involved in 50 to 100 marijuana arrests. The Supreme Court found Officer Sepulveda's testimony to be credible, which included his testimony regarding the circumstances of the stop and the discoveries that followed at the scene and at the police precinct station house.
A hearing court's credibility determinations are accorded great weight on appeal, as that is the court which has the ability to see, hear, and observe the witnesses before it (see People v Harris, 192 AD3d 151, 162; People v Fletcher, 130 AD3d 1063, 1064, affd 27 NY3d 1177). An appellate court will disturb a credibility determination if the witness's testimony is impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, as to be disregarded for being without evidentiary value, even if it is not contradicted by other testimony or evidence (see People v Harris, 192 AD3d at 163; People v Maiwandi, 170 AD3d 750, 751). A credibility determination may also be set aside on appeal if the witness's testimony is patently tailored to nullify constitutional objections (see People v Harris, 192 AD3d at 162-163; People v Maiwandi, 170 AD3d at 751-752; People v Lebron, 184 AD2d 784). Here, upon consideration of all relevant facts and circumstances, the testimony of Officer Sepulveda at the suppression hearing was not incredible or patently tailored to meet constitutional objections, and, [*3]in exercising our factual review power, we find that the Supreme Court properly credited his testimony (see People v Faulk, 185 AD3d 953, 955; People v Moore, 166 AD3d 654).
Moreover, window tint violations are a recognized basis for stopping a motor vehicle. The legal test, according to the Court of Appeals, is whether the police officer reasonably believes the windows to be over-tinted in violation of Vehicle and Traffic Law § 375(12-a)(b) (see People v Estrella, 10 NY3d 945; see also People v Swift, 185 AD3d 1442, 1443; People v Vanderpool, 157 AD3d 831; People v Brock, 107 AD3d 1025, 1026; People v Collins, 105 AD3d 1378, 1379; People v Hawkins, 45 AD3d 989, 991; People v McKane, 267 AD2d 253). Officer Sepulveda's testimony that he could not see into the defendant's vehicle meets that test. Our dissenting colleagues misread this Court's decision in People v Bacquie (154 AD3d 648), wherein it also was held that excessive window tinting justifies the stop of a motor vehicle. There, this Court noted that the police officer, who was apparently the same officer as was involved in the instant matter, observed the vehicle therein from "[a] couple of feet," that nothing had obstructed his view, that the area was illuminated by nighttime street lights, and that he had "written hundreds of summonses for illegally tinted windows" (id. at 649). That testimony, as discussed in Bacquie, did not define specific facts or legal factors that must be present for a court to find an officer's excessive tint testimony credible and to support the lawfulness of a traffic stop, but instead appears to have been incidentally mentioned to address contrary arguments made by a justice in dissent.
Alternatively, the vehicular stop was lawful based upon Officer Sepulveda's detection of the smell of marijuana which he attributed to the defendant's vehicle. Officer Sepulveda testified about his training and experience in detecting the smell of marijuana, his detection of an odor of "raw" marijuana, and the arrests he had made where marijuana was recovered. Crediting that testimony, as we do, the stop of the defendant's vehicle was lawful (see People v Harris, 163 AD3d 993, 994; People v Singletary, 156 AD3d 731).
Once the vehicle was stopped, probable cause developed at the scene of the traffic stop for the defendant's arrest on a marijuana-related charge (see People v De Bour, 40 NY2d 210, 233; People v Smith, 125 AD3d 897, 898).
The defendant's contention on appeal that the impoundment and initial inventory search of the Nissan was unlawful was not raised before the Supreme Court and is therefore unpreserved for appellate review (see CPL 470.05[2]; People v Rose, 204 AD2d 745), and we decline to reach that contention in the exercise of our interest of justice jurisdiction.
More specifically, while the defendant's omnibus motion addressed the traffic stop and search warrant, there was never any challenge to the impoundment of the defendant's vehicle. The other challenges raised by the defendant in his omnibus motion did not, by mere implication or osmosis, preserve the issue of the impoundment where it was not actually raised as a basis for suppression (see People v Lieberman, 47 NY2d 931, 932; People v Smith, 113 AD2d 905, 907; see also People v Carter, 86 NY2d 721, 723; People v Brown, 81 NY2d 798, 799). Defense counsel's closing arguments at the suppression hearing did not raise or contest the impoundment, as the arguments were instead focused on other issues. The Supreme Court, in its written decision, made a fleeting reference to the impoundment as part of the facts of the case, but engaged in no actual analysis about the legality of the impoundment. Since the issue of the lawfulness of the impoundment was neither raised by the omnibus motion nor at the suppression hearing itself, the People were not required to proffer a written police department impoundment policy (see generally People v Walker, 20 NY3d 122, 125) or establish a relevant police caretaker or public safety function (see generally People v Rivera, 192 AD3d 920, 921; People v Weeks, 182 AD3d 539, 541).
We agree with the Supreme Court's denial of that branch of the defendant's omnibus motion which was to controvert the search warrant. Subsequent to the ex parte issuance of a search warrant, a defendant is entitled to challenge the truthfulness of factual statements made in an affidavit supporting the warrant (see Franks v Delaware, 438 US 154, 155). If, at a hearing, a defendant demonstrates by a preponderance of the evidence that the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth, "the remedy is to delete the [*4]statement and review the sufficiency of the remaining evidence [and if] the warrant application contains sufficient evidence to support probable cause . . . suppression is not required" (People v Tambe, 71 NY2d 494, 505; see People v Worrell, 170 AD3d 1048, 1051). By contrast, if "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search suppressed" (People v Worrell, 170 AD3d at 1051). In his brief on appeal, the defendant focuses on the portion of Officer Sepulveda's warrant affidavit regarding his discovery of the hidden compartment in the Nissan's center console. The defendant failed to meet his burden of controverting the warrant, as he failed to analyze, must less establish, that after the excise of allegedly offending statements in the officer's affidavit, the remaining content was insufficient to establish probable cause.
The defendant's contention that the police violated his constitutional right to counsel by collecting his abandoned DNA sample during questioning on a subsequent arrest, for the purpose of a comparison in this case, is not preserved for appellate review (see CPL 470.05[2]), and not established on the face of the record (see People v McLean, 15 NY3d 117, 121).
The defendant's convictions of criminal possession of marijuana in the fourth degree and unlawful possession of marijuana became a nullity by operation of law, independently of any appeal, and without requiring any action by this Court (see CPL 160.50[5]; People v Hay, 207 AD3d 748, 749). Consequently, the appeal from so much of the judgment as convicted the defendant of criminal possession of marijuana in the fourth degree and unlawful possession of marijuana must be dismissed as academic (see People v Hay, 207 AD3d at 749).
Accordingly, we affirm the judgment of conviction insofar as reviewed.
DILLON, J.P., RIVERA and DOWLING, JJ., concur.
WOOTEN, J., concurs in part and dissents in part, and votes (1) to dismiss the appeal from so much of the judgment as convicted the defendant of criminal possession of marijuana in the fourth degree and unlawful possession of marijuana as academic, and (2) to reverse the judgment insofar as reviewed, on the law, grant those branches of the defendant's omnibus motion which were to controvert a search warrant and suppress physical evidence, dismiss the first and second counts of the indictment, each charging the defendant with criminal possession of a weapon in the second degree, and remit the matter to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50, with the following memorandum, in which BRATHWAITE NELSON, J., concurs:
I respectfully dissent in part and vote to reverse the judgment insofar as reviewed for several reasons. First, the People failed to establish a sufficient basis for the police stop of the defendant's vehicle. Second, the People failed to establish the legality of the impoundment of the defendant's vehicle. Third, the People failed to establish the validity of the purported inventory search of the defendant's vehicle.
The Defendant's Omnibus Motion
On September 30, 2016, the defendant moved, inter alia, (1) for a Mapp/Dunaway hearing (see Mapp v Ohio, 367 US 643; Dunaway v New York, 442 US 200) to determine, among other things, whether property seized from his vehicle was recovered pursuant to constitutionally accepted procedures; and (2) to controvert a search warrant for his vehicle executed on July 8, 2016, and to suppress all physical evidence recovered pursuant to the execution of the warrant.
In support of the motion, the defendant asserted that, in seeking the search warrant, Police Officer Kenneth Sepulveda stated in an affidavit that, during an inventory search, he observed marijuana and other items through a crack in the center console of the defendant's vehicle. The defendant argued that the crack in the center console was due to police misconduct, and that the search warrant was issued based upon "false statements" in Officer Sepulveda's affidavit. Further, the defendant sought a hearing "to explore the truthfulness of the allegations contained in the [*5]affidavit supporting the warrant application."
In an order dated January 19, 2017, the Supreme Court, inter alia, granted the defendant's request for a hearing, among other things, to determine the veracity of statements in Officer Sepulveda's affidavit. The court determined, inter alia, that the defendant alleged "specific facts contradicting the . . . sworn statements" in Officer Sepulveda's affidavit, and that Officer Sepulveda's observations during the inventory search were "clearly relevant and material to the finding of probable cause."
The Suppression Hearing
According to testimony elicited from Officer Sepulveda at the suppression hearing, on July 7, 2016, at around 9:00 p.m. to 9:15 p.m., he and Sergeant Javier Rodriguez were on patrol in Queens in an unmarked police vehicle. Officer Sepulveda indicated that he was driving southbound on 201st Street toward its intersection with 112th Avenue. As Officer Sepulveda approached a stop sign at that intersection, the defendant's vehicle drove by in a westbound direction on 112th Avenue, perpendicular to the police vehicle.
Officer Sepulveda testified that as the defendant passed, he observed that there were "[d]ark tints" on both the rear passenger and rear driver's side windows of the defendant's vehicle. Officer Sepulveda stated that he could tell the rear windows were tinted because he could not see through them "inside that area of the car."
Officer Sepulveda turned right onto 112th Avenue and followed the defendant's vehicle, during that time the defendant obeyed all vehicle and traffic laws. Officer Sepulveda testified that as he followed from a "[c]ouple of car lengths away," he could smell marijuana coming from the defendant's vehicle. Officer Sepulveda indicated that as he followed the defendant's vehicle, the windows of the police vehicle were open, but he did not know if any windows of the defendant's vehicle were open. After following the defendant for one to two blocks, Officer Sepulveda activated his lights and siren, and the defendant "immediately" pulled over his vehicle near the intersection of 199th Street and 112th Avenue.
Officer Sepulveda testified that, after pulling over the defendant's vehicle, he approached the driver's side of the defendant's vehicle while Sergeant Rodriguez approached the passenger side. Officer Sepulveda asked the defendant for his driver license and registration, which the defendant was unable to produce. Officer Sepulveda indicated that, as he stood by the driver's side door, the smell of marijuana was "very strong." Using a flashlight to look inside the vehicle, he saw "crumbs" which he believed to be marijuana on the floor behind the driver's seat. Officer Sepulveda did not see any marijuana cigarettes or any signs of recently burnt marijuana.
Officer Sepulveda testified that he instructed the defendant to step out of the vehicle "[t]o see if there was any more contraband inside of the vehicle," and the defendant complied. Officer Sepulveda indicated that "we were going to place [the defendant] under arrest," but they did not handcuff the defendant or advise him that he was being arrested at that time. Instead, Officer Sepulveda had the defendant wait by the rear of the vehicle while Sergeant Rodriguez checked the interior for contraband. After Sergeant Rodriguez completed his search of the interior, the defendant was asked to wait inside his vehicle while Sergeant Rodriguez searched the trunk.
Officer Sepulveda testified that the entire duration of the stop and search of the defendant's vehicle at that location was about 15 to 20 minutes. According to Officer Sepulveda's memo book, the defendant was placed under arrest and transported to the precinct station house at approximately 9:15 p.m.
The stop and search of the defendant's vehicle was observed and video-recorded by Avelyon Matthew, who also testified at the hearing. Matthew testified that the entire duration of the stop and search of the defendant's vehicle at that location was approximately 1 hour and 20 minutes. The footage recorded by Matthew, which was introduced into evidence at the hearing, depicts, inter [*6]alia, Sergeant Rodriguez searching the trunk of the defendant's vehicle, and at one point looking up in the direction of the recording device, which coincided with Sergeant Rodriguez stopping his search of the trunk.
Officer Sepulveda further testified that the defendant's vehicle was impounded and taken to the precinct station house "to obtain a search warrant because the smell of the marijuana was very strong coming from inside of the car." Although Officer Sepulveda indicated that he planned to obtain a search warrant at the time the vehicle was transported to the precinct station house, he conducted an "inventory search" of the vehicle at the precinct station house at approximately 11:30 p.m., prior to making any request for a search warrant. Officer Sepulveda acknowledged that no paperwork was completed showing that an inventory search was performed other than an entry in his memo book regarding the time of the purported inventory search.
Officer Sepulveda testified that, during the purported inventory search, he examined the vehicle's center console, from which a "very strong" smell of marijuana was "emanating," and he observed a "small crease through the rear back of the center console." Officer Sepulveda stated that he used a flashlight to "look inside," and "with my hand, I was able to push some plastic," and then "was able to actually see a little bit more," including marijuana, money, and a metal box he believed was a "trap"—which he stated was a term for a hidden compartment. Officer Sepulveda was not able to reach the items he observed inside the center console. While testifying at trial, Officer Sepulveda confirmed that, when he examined the rear of the center console, he "pried it open a little bit." After observing the contents of the center console, Officer Sepulveda ceased the purported inventory search to complete a search warrant affidavit requesting the issuance of a warrant.
In his affidavit, Officer Sepulveda alleged that, through "an open crack" in the center console, he observed a "large quantity of marijuana," money, and a silver-colored container with a hinge, and that he suspected the presence of firearms and/or ballistic evidence inside the container. When the search warrant was executed, the police found a firearm, marijuana, and $290 inside the container within the center console, and discovered $8,000 and a Ziploc bag containing marijuana beneath a spare tire in the trunk.
At the close of the hearing, the Supreme Court found, inter alia, that Officer Sepulveda's testimony was credible that he stopped the defendant's vehicle because he observed excessive tinting on "the rear passenger and rear drivers windows," and smelled marijuana while following the vehicle. The court further found that the defendant's vehicle was taken to the precinct station house "to get a search warrant based upon this marijuana smell," and that Officer Sepulveda saw a crease in the center console and "[u]sed the flashlight . . . to push away some plastic," enabling him to see marijuana and a hidden compartment. The court found that, due to the odor of marijuana, the "entire search" of the defendant's vehicle "could have been conducted right at the scene but they did not do it that way," and "[t]hey brought the car back" and "[d]id an inventory" before obtaining the search warrant. With regard to the impoundment and inventory search, the court found that "[i]t's fine that it was properly setout as the officer was doing."
The Charges and Trial
The defendant was charged with, inter alia, criminal possession of a weapon in the second degree (two counts), criminal possession of marijuana in the fourth degree, unlawful possession of marijuana, and operating a motor vehicle with a tinted window.
Following a jury trial, the defendant was convicted of criminal possession of a weapon in the second degree (two counts), criminal possession of marijuana in the fourth degree, and unlawful possession of marijuana. However, the defendant was acquitted of the charge of operating a motor vehicle with a tinted window.
Preservation
On appeal, the defendant contends, inter alia, that the People failed to establish the legality of the vehicle stop, the impoundment of his vehicle, and the purported inventory search which served as the basis for the search warrant.
Contrary to the People's contention, the defendant's contentions are preserved for appellate review. The Court of Appeals has held that even "'[a] general objection—such as that contained in [an] omnibus motion—is sufficient to preserve an issue for [appellate] review when the trial court expressly decided the question raised on appeal'" (People v Parker, 32 NY3d 49, 57, quoting People v Graham, 25 NY3d 994, 997 [internal quotation marks omitted]; see CPL 470.05[2]). Further, "'[a] party who without success has either expressly or impliedly sought or requested a particular ruling . . . is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule . . . accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered'" (People v Lessane, 142 AD3d 562, 563, quoting CPL 470.05[2]).
Here, the defendant argued in support of his omnibus motion that he was entitled to suppression of evidence obtained from "an illegal car stop" as "the fruits of the poisonous tree"; that Officer Sepulveda had no basis to stop his vehicle when he "was committing no crime, not involved in any suspicious activity or any overt criminal activity"; and that Officer Sepulveda lacked a sufficient basis, such as a tint meter, to determine if the windows were excessively tinted. At the suppression hearing, defense counsel again argued that the physical evidence should be suppressed as "fruit of a poisonous tree based on the illegal stop." The Supreme Court found that Officer Sepulveda's testimony regarding the vehicle stop was credible, and that the vehicle was "justifiably stopped." Thus, not only did the defendant specifically argue that Officer Sepulveda had no basis to stop the vehicle, but the court also expressly decided the issue of whether Officer Sepulveda gave sufficiently credible testimony regarding the grounds for the vehicle stop (see CPL 470.05[2]; People v Jones, 202 AD3d 821; People v Curry, 192 AD3d 1649, 1650; People v Miles, 58 AD3d 872).
My colleagues in the majority agree that the defendant's challenge to the lawfulness of the traffic stop and the credibility of Officer Sepulveda's testimony are preserved for appellate review, but assert that some specific arguments advanced on appeal are unpreserved. With respect to the defendant's contention that Officer Sepulveda failed to offer testimony as to any experience or basis in assessing whether windows are excessively tinted, that contention was preserved for appellate review by the defendant's arguments on his omnibus motion that Officer Sepulveda lacked a sufficient basis to determine if the windows were excessively tinted.
Furthermore, the defendant sufficiently preserved for appellate review his contentions pertaining to the purported inventory search. On appeal, the defendant argues that "[t]he hearing court erred in failing to controvert the search warrant that was based on the material false statement that the observations establishing probable cause for the warrant were made during a purported inventory search." The defendant raised the same argument on his omnibus motion, seeking to controvert the search warrant on the ground that the warrant "was based upon . . . false statements" in Officer Sepulveda's affidavit regarding his observations "during an inventory search." Moreover, the defendant specifically argued on the omnibus motion, as he argues on appeal, that the "false statements" in Officer Sepulveda's affidavit pertained to his observations through a "crack" in the center console of the defendant's vehicle during the purported inventory search, without disclosing in the affidavit that Officer Sepulveda could not have seen inside the center console in the absence of tampering. Further, the defendant argued on the omnibus motion that the purported inventory search during which Officer Sepulveda looked inside the center console was improperly "made without warrant, probable cause, consent, or other authority in law." In addition, the defendant argued on the omnibus motion, as he does on appeal, that the police "attempt[ed] to find contraband . . . prior to any search warrant application." Thus, the defendant preserved his contentions that the inventory search was unlawful and a pretextual search for contraband, that the search of the closed center console during the purported inventory search was improper, and that Officer Sepulveda made false statements in his affidavit for a search warrant pertaining to his observations during the purported inventory search.
Moreover, the defendant argued on the omnibus motion that, as the owner of the vehicle, he was entitled to be free from "unreasonable searches and seizures" of his vehicle. It cannot reasonably be disputed that the impoundment of the vehicle to perform the purported inventory search constituted a "seizure."
To the extent that my colleagues in the majority construe the omnibus motion as pertaining only to the initial traffic stop and the search warrant, that determination is mistaken. The defendant's omnibus motion specifically contested the search performed "without warrant" (emphasis added), during which Officer Sepulveda observed the contents of the center console, and the defendant's motion explicitly challenged the lawfulness of Officer Sepulveda's observations during the purported inventory search. Indeed, the basis for the defendant's challenge to the search warrant was that it was premised upon Officer Sepulveda's improper observations during the purported inventory search.
Although in the omnibus motion the defendant raised only a general challenge to the impoundment of the vehicle as an improper seizure—in contrast to the more specific arguments raised on the motion with respect to the vehicle stop and purported inventory search—it is well-settled that even a general objection raised on an omnibus motion is sufficient to preserve an issue for appellate review when the trial court expressly decided the question raised on appeal (see People v Parker, 32 NY3d at 57; People v Graham, 25 NY3d at 997). Here, at the close of the hearing the Supreme Court found that, although the police could have conducted a search of the entire vehicle at the location of the traffic stop, "they did not do it that way," and instead "brought the car back" and "[d]id an inventory," which was "fine" and "properly setout as the officer was doing." Thus, not only did the defendant's omnibus motion challenge the seizure of his vehicle and the ensuing warrantless search at the precinct station house, but the court also expressly decided that the impoundment and purported inventory search of the vehicle were valid (see CPL 470.05[2]; People v Slater, 141 AD3d 677; People v Graham, 16 AD3d 237).
My colleagues in the majority describe the Supreme Court's findings that it was "proper[ ]" for the police to "br[ing] the car back" to the precinct station house and "[do] an inventory" as "a fleeting reference" without any "actual analysis." However, there is no requirement in CPL 470.05(2) that the court engage in an extended analysis or set forth the reasons for its ruling in order for the issue to be preserved. While brief, there was no ambiguity in the court's findings that the impoundment and purported inventory search of the vehicle were valid (cf. People v Parker, 32 NY3d at 58).
Consequently, the defendant's contentions with respect to the legality of the vehicle stop, impoundment, and inventory search are preserved for appellate review.
Legality of the Vehicle Stop
Contrary to the People's contention, they failed to establish the legality of the vehicle stop.
"'On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance'" (People v Rowe, 189 AD3d 894, 895, quoting People v Diaz, 146 AD3d 803, 804). "While great weight must be accorded the credibility findings of the hearing court, this Court has also observed 'that in assessing credibility we should not discard common sense and common knowledge'" (People v Harris, 192 AD3d 151, 163, quoting Matter of Carl W., 174 AD2d 678, 679 [internal quotation marks omitted]). "'[T]estimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case'" (People v Rhames, 196 AD3d 510, 513, quoting People v Maiwandi, 170 AD3d 750, 751 [internal quotation marks omitted]). Further, this Court "'will not hesitate to refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections'" (People v Harris, 192 AD3d at 163, quoting People v Lebron, 184 [*7]AD2d 784, 784). "The application of the foregoing principles in the context of this Court's responsibility to conduct an independent factual review does not require a finding that testimony is incredible as a matter of law" (People v Harris, 192 AD3d at 163).
"'The stop of an automobile is a seizure implicating constitutional limitations'" (People v Romero, 199 AD3d 715, 716 [alterations omitted], quoting People v Spencer, 84 NY2d 749, 752). "'Automobile stops are lawful only [1] when "based on probable cause that a driver has committed a traffic violation" (People v Robinson, 97 NY2d 341, 349-350); [2] when based on a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime (People v Spencer, 84 NY2d 749, 752-753); or, [3] when conducted pursuant to nonarbitrary, nondiscriminatory, uniform highway traffic procedures'" (People v Mortel, 197 AD3d 196, 206, quoting People v Hinshaw, 35 NY3d 427, 430 [internal quotation marks omitted]).
In People v Bacquie (154 AD3d 648), this Court recognized that an officer's observation of "what are suspected to be excessively tinted vehicle windows, in violation of Vehicle and Traffic Law § 375(12-a)(b), may justify a stop of that vehicle" (id. at 649 [emphasis added]). However, this Court's decision in Bacquie clarified that the issue of whether an officer's purported suspicion of excessively tinted windows is sufficient to justify a vehicle stop is dependent on the totality of the circumstances. In Bacquie, this Court stated that the officer who stopped the vehicle—the same officer as in this case—offered specific testimony that "[a]nything under 70 percent light transmittance is a summonsable offense," that he observed the defendant's vehicle from a distance of only "[a] couple of feet," that nothing obstructed his view of the vehicle and there were functioning street lights, that the defendant's vehicle "directly passed [sic] me making a left," and that "although he did not recall receiving training regarding tinted windows, he had experience in this area, having made thousands of stops and written hundreds of summonses for illegally tinted windows" (id. at 649 [internal quotation marks omitted]).
Here, in contrast to the circumstances present in Bacquie, Officer Sepulveda did not testify that the area where he initially observed the defendant's vehicle at night was illuminated by street lights, that the defendant's vehicle passed in close proximity to the police vehicle, that he had any experience identifying excessively tinted windows based on having made prior stops for which summonses were issued for illegally tinted windows, or as to what specific degree of window tinting constitutes an offense. Thus, Officer Sepulveda's testimony, even if credited, was insufficient to establish a reasonable suspicion that the rear windows of the defendant's vehicle had a light transmittance of less than 70% in violation of the Vehicle and Traffic Law (see Vehicle and Traffic Law § 375[12-a][b][1]).
To the extent my colleagues in the majority construe the factors set forth in Bacquie as mere dicta, I disagree. While it is proper for an officer to stop a vehicle where the officer "reasonably believed" the windows were excessively tinted (People v Estrella, 10 NY3d 945, 946 [emphasis added]), an officer's conclusory assertion that the windows appeared to be excessively tinted, without more, is insufficient to establish a reasonable basis for the officer's belief. To hold otherwise would essentially require courts to find that a vehicle stop was valid every time an officer testifies simply that he or she stopped a vehicle due to what appeared to be excessively tinted windows, regardless of whether the officer had a reasonable basis for that belief. Notably, Officer Sepulveda did not testify at the hearing that he used a tint meter after the vehicle stop to verify if the windows were, in fact, excessively tinted (cf. People v Swift, 185 AD3d 1442, 1443). Moreover, the defendant was acquitted after trial of the charge of operating a motor vehicle with a tinted window.
Furthermore, under the circumstances of this case, Officer Sepulveda's testimony regarding the vehicle stop was incredible and patently tailored to meet constitutional objections (see People v Maiwandi, 170 AD3d 750, 751; People v Rutledge, 21 AD3d 1125, 1126; People v Lewis, 195 AD2d 523, 524; People v Miret-Gonzalez, 159 AD2d 647, 649-651).
First, Officer Sepulveda's claim that he was able to observe that both the rear passenger and driver's side windows of the defendant's vehicle were excessively tinted during the [*8]fleeting moment at night when the defendant's vehicle passed by—perpendicular to his own vehicle—is contrary to common sense. Officer Sepulveda stated that he believed the defendant's rear passenger and rear driver's side windows were excessively tinted because he "couldn't see inside that area of the car." However, Officer Sepulveda failed to explain how, if he could not see through the rear window on either side of the vehicle, he was able to discern that the rear window on the opposite side of the vehicle was also excessively tinted despite his view being obstructed by the tinted window on the near side of the vehicle. Indeed, Officer Sepulveda confirmed at trial that he was only able to observe the passenger side of the defendant's vehicle as it passed by his line of vision.
Further, Officer Sepulveda's testimony that he was able to smell marijuana emanating from the defendant's vehicle as he followed the defendant from a "[c]ouple of car lengths away" "strains credulity and defies common sense" (People v Maiwandi, 170 AD3d at 751). Officer Sepulveda acknowledged that he did not know if any of the windows in the defendant's vehicle were open as he followed that vehicle, effectively conceded that at least the rear windows of the defendant's vehicle were closed, acknowledged that he did not see any marijuana cigarettes tossed from the defendant's vehicle while following it, and acknowledged that he saw no signs of recently burnt marijuana—such as a marijuana cigarette—immediately after he stopped the defendant's vehicle and looked inside with a flashlight. Indeed, there is no indication in the record that the police ever recovered any marijuana cigarettes or burnt marijuana from the defendant's vehicle even after executing the search warrant.
While Officer Sepulveda claimed that he detected the smell of "raw" marijuana, which was not "ignited," from a "[c]ouple of car lengths away," Officer Sepulveda's testimony in that regard strains credulity, since it is undisputed that aside from "crumbs" on the floor, the marijuana was all stored within closed compartments in the vehicle. The marijuana was ultimately found inside a sealed metallic container enclosed within the center console, and in a Ziploc bag beneath a spare tire in the trunk. There is no indication in the record that the trunk, the Ziploc bag, the center console, or any windows of the defendant's vehicle were open while Officer Sepulveda followed the defendant's vehicle. While it is certainly plausible that Officer Sepulveda could smell unburned marijuana when standing immediately next to the open driver's side window after the traffic stop, it is difficult to imagine how mere "crumbs" and unburned marijuana enclosed within sealed compartments could give off a "strong odor" from a "[c]ouple of car lengths away."
In addition, Officer Sepulveda testified that the entire duration of the vehicle stop took only around 15 to 20 minutes, and that the defendant was arrested at approximately 9:15 p.m. However, that testimony was contradicted by Matthew, who witnessed the vehicle stop and testified that it lasted for approximately 1 hour and 20 minutes, about an hour longer than the duration testified to by Officer Sepulveda.
Moreover, Officer Sepulveda claimed that, after the defendant was instructed to step out of the vehicle "[t]o see if there was any more contraband inside of the vehicle," he "frisked" the defendant for "any possible weapons." However, Matthew again contradicted Officer Sepulveda. Matthew, who watched the officers pull over the defendant's vehicle, the defendant step out of the vehicle, and Sergeant Rodriguez search the vehicle, testified that he did not observe the officers ever frisk the defendant.
Notably, the Supreme Court did not find that Matthew's testimony was lacking in credibility in any respect.
Viewing the significant discrepancies regarding the testimonies of Officer Sepulveda and Matthew in conjunction with the aforementioned deficiencies in Officer Sepulveda's testimony, Officer Sepulveda's account of the vehicle stop is unworthy of belief.
Consequently, the physical evidence obtained from the defendant's vehicle should have been suppressed as fruit of an unlawful vehicle stop (see People v Lopez, 75 AD3d 610, 612). Without this evidence, there would not be legally sufficient evidence to prove the defendant's guilt [*9]of criminal possession of a weapon in the second degree. Thus, I vote to dismiss the first and second counts of the indictment charging the defendant with criminal possession of a weapon in the second degree (see People v Ahmad, 193 AD3d 961, 964).
Legality of the Impoundment
Contrary to the People's contention, they failed to establish the lawfulness of the impoundment of the defendant's vehicle.
"When the driver of a vehicle is arrested, the police may impound the car, and conduct an inventory search, where they act pursuant to 'reasonable police regulations relating to inventory procedures administered in good faith'" (People v Walker, 20 NY3d 122, 125, quoting Colorado v Bertine, 479 US 367, 374; see People v Weeks, 182 AD3d 539, 541). "The police may also impound a vehicle without a warrant '[i]n the interests of public safety and as part of what the [United States Supreme] Court has called community caretaking functions'" (People v Weeks, 182 AD3d at 541, quoting South Dakota v Opperman, 428 US 364, 368 [internal quotation marks omitted]). To the extent my colleagues in the majority assert that the People were relieved of their burden of establishing a police impoundment procedure or a public safety function by the defendant's purported failure to raise the lawfulness of the impoundment before the Supreme Court, the cases cited by the majority make no such determination.
Here, the People failed to present any evidence as to whether the police had a policy for the impoundment of vehicles, what any such policy required, or whether the police complied with any such policy when impounding the defendant's vehicle (see People v Rivera, 192 AD3d 920, 921; People v King, 188 AD3d 721, 722-723; People v Weeks, 182 AD3d at 541). Thus, this case is distinguishable from the circumstances present in People v Tardi (28 NY3d 1077), in which the record showed that "the police officers' decision to tow defendant's vehicle . . . was properly made in accordance with standard criteria set forth in the police department's written policy" (id. at 1078 [internal quotation marks omitted]). Likewise, in People v Walker (20 NY3d 122), testimony was elicited from a trooper that it was procedure to tow a vehicle whenever the operator's license was suspended or revoked and the registered owner was not present (see id. at 125). By contrast, in the case at bar, Officer Sepulveda did not offer even generalized testimony that the police had a policy of impounding a vehicle when an arrest is made after a vehicle stop.
Moreover, the People did not present any evidence that the impoundment of the defendant's vehicle was carried out in the interests of public safety or as part of the police's community caretaking function (see People v Rivera, 192 AD3d at 921; People v Weeks, 182 AD3d at 541). Due to the insufficiency of such proof at the hearing, any determination that the police had to impound the defendant's vehicle due to public safety concerns—such as the vehicle being left at a location where parking was not permitted or the unavailability of another driver—would be based on mere speculation (see People v Leonard, 119 AD3d 1237, 1239). Indeed, Officer Sepulveda readily acknowledged that the purpose of taking the vehicle back to the precinct station house was to continue searching for marijuana, not due to any public safety concerns. Thus, to the extent my colleagues in the majority state that the vehicle was impounded because "no third person was present to drive the vehicle from the scene," not only was no testimony to that effect elicited at the hearing, but that finding was contradicted by Officer Sepulveda's own testimony as to the reason for the impoundment.
In view of Officer Sepulveda's testimony that the purpose of the impoundment was to search for marijuana at the precinct station house, this case is distinguishable from the circumstances of Colorado v Bertine (479 US 367). In that case, the United States Supreme Court determined that the impoundment was lawful where "[t]here was no showing that the police chose to impound [the vehicle] in order to investigate suspected criminal activity" (id. at 376). Likewise, in People v Tardi (28 NY3d at 1078), the New York Court of Appeals upheld the validity of an impoundment where "there [wa]s no indication that the officers suspected that they would discover evidence of further criminal activity in defendant's vehicle, or that they towed the vehicle for that purpose." By contrast, in the case at bar, it cannot be said that the motivation of the impoundment [*10]and subsequent search of the vehicle was "caretaking rather than criminal investigation" (People v Cochran, 22 AD3d 677, 677).
Consequently, the People failed to establish a lawful impoundment of the defendant's vehicle, which was necessary to conduct the purported inventory search at the precinct station house (see People v Mortel, 197 AD3d at 215).
Legality of the Purported Inventory Search
Contrary to the People's contention, they failed to establish the lawfulness of the purported inventory search of the defendant's vehicle which served as the basis for the search warrant.
As the United States Supreme Court stated in South Dakota v Opperman (428 US at 369), inventory searches of impounded vehicles are conducted to satisfy the following objectives: "the protection of the owner's property while it remains in police custody," "the protection of the police against claims or disputes over lost or stolen property," and "the protection of the police from potential danger." The New York Court of Appeals has also recognized that "[a]n inventory search is exactly what its name suggests, a search designed to properly catalogue the contents of the item searched" (People v Johnson, 1 NY3d 252, 256). Thus, "[i]nventory searches . . . are not conducted in order to discover evidence of crime" (People v Mortel, 197 AD3d at 211 [internal quotation marks omitted]), and "an inventory search must not be 'a ruse for a general rummaging in order to discover incriminating evidence'" (People v Padilla, 21 NY3d 268, 272, quoting People v Johnson, 1 NY3d at 256). "[A]n inventory search will be constitutionally invalid where the search was merely a pretext to search for evidence of a crime" (People v Mortel, 197 AD3d at 214; see People v Johnson, 1 NY3d at 257).
"Although a warrant based on probable cause is not required to conduct an inventory search, 'courts have insisted that an inventory search be conducted according to a familiar routine procedure and that the procedure meet two standards of reasonableness'" (People v Mortel, 197 AD3d at 217, quoting People v Galak, 80 NY2d 715, 719). First, "the procedure must be rationally designed to meet the objectives that justify the search in the first place," and second, "the procedure must limit the discretion of the officer in the field" (People v Galak, 80 NY2d at 719). The People bear the burden not only of demonstrating that the vehicle was lawfully impounded at the time of the inventory search, but also of "submitting evidence to establish that the inventory search was conducted pursuant to standardized local police procedures" (People v Mortel, 197 AD3d at 217; see People v Padilla, 21 NY3d at 272).
Here, the People failed to present any evidence that Officer Sepulveda conducted the inventory search pursuant to a police procedure which was "rationally designed to meet the objectives justifying such a search and effectively limited his discretion so as to assure that he was not merely rummaging for incriminating evidence" (People v Mortel, 197 AD3d at 221). Officer Sepulveda never made even a generalized statement that there was any police procedure for conducting inventory searches, let alone that such a procedure was followed in this instance. Moreover, Officer Sepulveda acknowledged that he did not complete any paperwork to memorialize any items in the defendant's vehicle which were inventoried (see People v Gomez, 13 NY3d 6, 11; People v Galak, 80 NY2d at 720). Significantly, the only items which Officer Sepulveda testified that he observed during the purported inventory search were those concealed within the center console, and Officer Sepulveda acknowledged that the purported inventory search ceased as soon as he discovered incriminating evidence inside the center console, without any indication that the contents of the entire vehicle had been inventoried (see People v Williamson, 81 AD2d 963, 964).
Further, Officer Sepulveda did not even claim that the purpose of the purported inventory search was to inventory the contents of the vehicle. Rather, Officer Sepulveda testified that the decision was made at the time of the vehicle stop "to take the car back to the precinct to obtain a search warrant because the smell of the marijuana was very strong coming from inside of the car." Despite that testimony, it is undisputed that, once the defendant's vehicle was brought to [*11]the precinct station house, Officer Sepulveda conducted the purported inventory search before making any request for a search warrant. The People did not present any evidence showing the existence of exigent circumstances which required Officer Sepulveda to conduct the purported inventory search prior to requesting a search warrant (see id. at 964). Thus, the People failed to meet their burden of establishing that the purported inventory search was not a pretext to discover marijuana and other contraband concealed within the vehicle (see People v Mortel, 197 AD3d at 229-230; People v Espinoza, 174 AD3d 1062, 1064).
The pretextual nature of the purported inventory search is further demonstrated by Officer Sepulveda's testimony that, during that warrantless search, he observed a "small crease" on the back of a center console, that he attempted to use his flashlight to "look inside," and that he then "push[ed] some plastic" and "was able to actually see a little bit more," including marijuana, money, and a hidden compartment out of reach. Even assuming, arguendo, that Officer Sepulveda's testimony at the hearing left any ambiguity as to whether he created a larger opening to look inside a closed compartment for contraband, Officer Sepulveda confirmed at trial that when he examined the center console, "I pried it open a little bit" (emphasis added). Thus, Officer Sepulveda's testimony clearly demonstrated that he used the purported inventory search to search for marijuana and other contraband within a closed space out of plain view for purposes other than an inventory of the items in the vehicle.
My colleagues in the majority do not dispute that the People failed to meet their burden of submitting evidence that the inventory search was conducted pursuant to standardized police procedures (see People v Padilla, 21 NY3d at 272; People v Mortel, 197 AD3d at 217). Rather, my colleagues in the majority take the position that "the evidence discovered within the vehicle during the inventory search was not subject to suppression" because the defendant failed to establish that "after the excise of allegedly offending statements in [Officer Sepulveda's] affidavit, the remaining content was insufficient to establish probable cause." However, the People raise no argument on appeal that the defendant failed to establish that Officer Sepulveda's affidavit was insufficient to establish probable cause after the excise of statements pertaining to Officer Sepulveda's observations during the purported inventory search. Rather, the People argue on appeal that Officer Sepulveda did not make any statements in support of the warrant which were "materially false," and that the search at the precinct station house was "a proper inventory search." Notably, there is no mention on even a single occasion anywhere in the People's brief of "excising" or omitting any portions of Officer Sepulveda's affidavit, nor do the People argue that Officer Sepulveda's affidavit was sufficient to justify the search warrant without consideration of his assertions in the affidavit pertaining to the purported inventory search.
It is well-settled that "we are required to decide this case solely with reference to the arguments actually made by the parties," and that "[i]t would not be appropriate for us to decide this appeal 'on a distinct ground that we winkled out wholly on our own'" (Kaufman v Kaufman, 189 AD3d 31, 69, quoting Green Tree Servicing, LLC v Molini, 171 AD3d 880, 882 [internal quotation marks omitted]; see Misicki v Caradonna, 12 NY3d 511, 519; Matter of B.Z. Chiropractic, P.C. v Allstate Ins. Co., 197 AD3d 144, 158-159). As the Court of Appeals recognized, "[w]e are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made" (Misicki v Caradonna, 12 NY3d at 519). Thus, there is no basis to decide this appeal on a ground not raised by the People, and to consider whether Officer Sepulveda's affidavit in support of the search warrant was supported by probable cause after the excise of statements pertaining to Officer Sepulveda's observations during the purported inventory search.
In any event, even assuming, arguendo, it is appropriate to address this issue, Officer Sepulveda's affidavit in support of the search warrant was predicated and dependent upon his observations made during the unlawful purported inventory search. Prior to the purported inventory search, Officer Sepulveda had observed nothing more than "crumbs" of marijuana on the floor of the vehicle and an odor of marijuana, without any indication of the presence of a weapon in the vehicle. However, based upon Officer Sepulveda's observations made during the purported inventory search of a hidden container within the center console, Officer Sepulveda opined in his [*12]affidavit that the container might contain firearms and/or "ballistic evidence." Thus, there would be no basis to issue a search warrant to search the vehicle for firearms and/or ballistic evidence after the excise of statements pertaining to Officer Sepulveda's observations during the unlawful purported inventory search. Moreover, the mere presence of "crumbs" of marijuana on the floor, coupled with a marijuana odor, was insufficient to establish probable cause to search the trunk and closed containers in the vehicle for more significant quantities of marijuana (see People v Ponder, 195 AD3d 123, 131).
Accordingly, the physical evidence recovered from the vehicle must be suppressed as fruits of the unlawful impoundment and inventory search (see People v Rivera, 192 AD3d at 921).
Conclusion
Since the People failed to establish the legality of the vehicle stop, the impoundment of the defendant's vehicle, or the purported inventory search upon which the request for a search warrant was predicated, the Supreme Court should have granted those branches of the defendant's omnibus motion which were to controvert the search warrant and to suppress physical evidence seized in the execution thereof. Accordingly, I vote to dismiss the first and second counts of the indictment, each charging the defendant with criminal possession of a weapon in the second degree, and to remit the matter to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.
ENTER:
Maria T. Fasulo
Clerk of the Court