People v Noble (2022 NY Slip Op 07248)

People v Noble

2022 NY Slip Op 07248

Decided on December 21, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 21, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
LARA J. GENOVESI
DEBORAH A. DOWLING
HELEN VOUTSINAS, JJ.

2017-05566
 (Ind. No. 3211/11)

[*1]The People of the State of New York, respondent,
v
Jeffrey Noble, appellant.

Patricia Pazner, New York, NY (Martin B. Sawyer of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Roni C. Piplani, and Joseph M. DiPietro of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Joseph A. Zayas, J.), rendered April 5, 2017, convicting him of criminal possession of a weapon in the third degree (two counts), operating or driving a motor vehicle without a license, and making an unlawful turn, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials.
ORDERED that the judgment is affirmed.
The defendant's convictions arose out of a traffic stop in Queens on June 11, 2010. Officer Mary Keller-Ciliberti testified at a suppression hearing that she and another officer were patrolling in a marked vehicle when they observed a blue Toyota Camry driven by the defendant make a right-hand turn without first engaging a turn signal. The officers stopped the Toyota, exited their vehicle, and approached the Toyota. Upon a computer check with the Department of Motor Vehicles, the defendant's driver license was found to have been suspended and the insurance for the Toyota to have expired. The defendant was arrested at the scene and taken to the police precinct. The Toyota was impounded since it could not be driven due to the expired insurance. Officer Keller-Ciliberti testified that she conducted an inventory search of the Toyota at the precinct, during which a backpack containing two operable handguns was removed from its trunk. Following the administration of Miranda warnings (see Miranda v Arizona, 384 US 436), the defendant provided a written statement in which he, among other things, confessed to placing the backpack, which he knew contained the handguns, into the trunk of the Toyota. The defendant moved to suppress the physical evidence recovered from the Toyota, as well as his written statement to law enforcement officials. The Supreme Court denied the motion.
The defendant argues that the Supreme Court erred by denying his motion to suppress physical evidence and his statement to law enforcement officials, on the ground that Officer Keller-Ciliberti's hearing testimony was patently incredible, tailored to nullify constitutional objections, and legally insufficient to establish the lawfulness of the traffic stop. A hearing court's credibility determinations are accorded great weight on appeal, as that is the court which has the ability to see, hear, and observe the witnesses before it (see People v Harris, 192 AD3d 151, 162). Here, upon [*2]consideration of all relevant facts and circumstances, the testimony of Officer Keller-Ciliberti at the suppression hearing was not incredible or patently tailored to meet constitutional objections, and, in exercising our factual review power, we find that the court properly credited her testimony (see People v Biggs, 208 AD3d 1340). Moreover, Officer Keller-Ciliberti's stop of the defendant's vehicle was reasonable based upon her probable cause to believe that the driver had violated Vehicle and Traffic Law § 1163 by failing to use the turn signal when turning (see People v Sluszka, 15 AD3d 421, 423). Moreover, in light of the defendant's suspended license, Officer Keller-Ciliberti had probable cause to arrest the defendant (see People v De Bour, 40 NY2d 210, 233; People v Foster, 153 AD3d 853, 854).
Contrary to the People's contention, the defendant's argument that the inventory search of the Toyota was unlawful is preserved for appellate review since the Supreme Court addressed this issue in the order denying suppression (see CPL 470.05[2]; People v Feingold, 7 NY3d 288, 290; cf. People v Biggs, 208 AD3d 1340). The People met their burden of demonstrating the validity and legality of the inventory search (see People v Padilla, 21 NY3d 268, 272). "When the driver of a vehicle is arrested, the police may impound the car, and conduct an inventory search, where they act pursuant to 'reasonable police regulations relating to inventory procedures administered in good faith'" (People v Walker, 20 NY3d 122, 125, quoting Colorado v Bertine, 479 US 367, 374). Here, notwithstanding the lack of detailed police testimony regarding the departmental policy pertaining to inventory searches (cf. People v Mortel, 197 AD3d 196, 215), the record establishes that Officer Keller-Ciliberti inventoried the contents of the defendant's vehicle, as a necessary prerequisite to its impoundment, by thoroughly cataloguing all of the items recovered from the vehicle, and that her efforts were meticulously documented in detailed, itemized vouchers. The vouchers completed by Officer Keller-Ciliberti, on their face, "fill out the hallmark of an inventory search: a meaningful inventory list" (People v Johnson, 1 NY3d 252, 256). Moreover, when asked about "particular procedures that [she] had to follow as a police officer when [she] took the vehicle into [her] custody for safekeeping," Officer Keller-Ciliberti testified, "Yes, . . . when we take a vehicle into custody we do a full inventory search of the vehicle." She noted that she cannot send a vehicle to the pound if property is contained within it. Under these circumstances, there was adequate "evidence demonstrating 'that th[e] particular officer conducted th[e] search properly and in compliance with established procedures'" (People v Mortel, 197 AD3d at 218, quoting People v Johnson, 1 NY3d at 256).
Additionally, based on the totality of the circumstances and as a matter of law, the defendant's written statement was not involuntarily given (see People v Jin Cheng Lin, 26 NY3d 701, 719). The evidence at the suppression hearing demonstrated no unnecessary delay between the defendant's arrest and his questioning, and established that the defendant's statement was freely and voluntarily given after he was apprised of, and acknowledged, his right to counsel (see People v Lewis, 204 AD3d 697, 698; People v Williams, 297 AD2d 325, 325-326). Further, the defendant was provided with food and drink, access to a bathroom, and the opportunity to rest prior to questioning, and nothing in the record suggests that he was physically infirm or coerced into providing a statement (see People v Bray, 163 AD3d 703, 704).
The defendant's contention that his conviction of two counts of criminal possession of a weapon in the third degree is not supported by legally sufficient evidence is unpreserved for appellate review, as his motion to dismiss made at the close of evidence was not sufficiently specific (see CPL 470.05[2]; People v Hawkins, 11 NY3d 484, 492; People v Gray, 86 NY2d 10, 19). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt of criminal possession of a weapon in the third degree beyond a reasonable doubt (see People v Huff, 132 AD2d 622, 623; see also People v Wright-Hale, 180 AD3d 814, 815). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt as to those counts was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant failed to raise any constitutional objections to the Supreme Court's Sandoval ruling (see People v Sandoval, 34 NY2d 371), and, therefore, to the extent that the defendant now raises constitutional claims, they are unpreserved for appellate review (see People v Grant, 7 NY3d 421, 424; People v Diaz, 50 AD3d 919). In any event, the Sandoval ruling did not deprive the defendant of a fair trial, as it reflected a proper balance between the probative value of the proffered evidence on the issue of the defendant's credibility and the danger of prejudice to the defendant (see People v Sandoval, 34 NY2d at 375; People v Lombardo, 151 AD3d 887).
The defendant's remaining contentions are without merit.
BRATHWAITE NELSON, J.P., GENOVESI, DOWLING and VOUTSINAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court