■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JORGE CARDENAS, Appellant. [912 NYS2d 742]—

Garry, J. Appeal from a judgment of the County Court of Rensselaer County (Jacon, J.), rendered January 4, 2008, upon a

verdict convicting defendant of the crime of robbery in the second degree (two counts).

In December 2006, two men robbed a convenience store in the City of Rensselaer, Rensselaer County at gunpoint. Shortly after the victim reported the incident to the Rensselaer Police Department, the North Greenbush Police Department stopped a suspicious vehicle in the Town of North Greenbush, Rensselaer County for having illegally tinted windows. Defendant and Fernando Castellano were two of the three passengers in the vehicle. Upon discovering that defendant and Castellano matched the victim's description of the robbery suspects, the North Greenbush Police Department contacted the Rennselaer Police Department, and the two were delivered into their custody at the scene. Defendant and Castellano were each indicted on two counts of robbery in the second degree and convicted as charged after a joint jury trial. County Court sentenced defendant to concurrent prison terms of eight years on each count. Defendant now appeals, and we affirm.

Initially, defendant argues that County Court erred in denying his motion to suppress the evidence police found in the vehicle. After the vehicle was stopped, the driver was arrested for aggravated unlicensed operation of a motor vehicle; the car's registered owner was not present. The officers involved in the stop testified that in such circumstances, it was the standing policy of the North Greenbush Police Department to tow the stopped vehicle and, before the tow, to conduct an initial cursory inspection to identify and safeguard any valuables and protect the police and tow truck driver from any dangerous instrumentalities. In the course of this initial search, the North Greenbush officer observed multiple packs of cigarettes, rubber gloves, and a pellet gun in the passenger compartment. He reported these findings to the Rensselaer officers at the scene. The North Greenbush officer completed a tow slip form at the scene. He did not subsequently complete an inventory form, as department procedure would normally require, because instead of being towed to the North Greenbush station where a full inventory search would have been conducted, the vehicle was immediately turned over to the Rensselaer police. A Rensselaer detective testified that he promptly obtained a search warrant. The search warrant inventory was entered into evidence at the hearing.

This testimony established that the initial search was conducted for the legitimate objectives of protecting property in police custody, insuring against claims of lost, stolen or vandalized property, and protecting police and others from dangerous

instrumentalities (*see People v Galak*, 80 NY2d 715, 718 [1993]). We find that this search was " 'both reasonable and conducted pursuant to established police agency procedures that are designed to meet the legitimate objectives of the search while limiting the discretion of the officer in the field' " (*People v Peters*, 49 AD3d 957, 958 [2008], *lv denied* 10 NY3d 938 [2008], quoting *People v Briggs*, 21 AD3d 1218, 1219 [2005], *lv denied* 5 NY3d 851 [2005]). The People met their burden to establish that the evidence was obtained during a lawful search properly conducted, and the evidence obtained was properly admitted (*see People v Gomez*, 13 NY3d 6, 11 [2009]).

Next, County Court properly permitted the victim to identify defendant during the trial. The People concede that the police used impermissibly suggestive procedures when the victim identified defendant in a pretrial lineup. At the suppression hearing, however, the victim testified that during the robbery the store was well lit and he was able to see defendant's face for a period of approximately two minutes while defendant was within an arm's length of him; he asserted unequivocally that he recognized defendant from the robbery and not from the lineup (*see People v Richardson*, 9 AD3d 783, 786-787 [2004], *lv denied* 3 NY3d 680 [2004]; *People v Morgan*, 259 AD2d 771, 772 [1999], *lv denied* 93 NY2d 975 [1999]). The suggestive lineup therefore did not require exclusion of the in-court identification, as an independent basis for its admission was shown by clear and convincing evidence (*see People v Chipp*, 75 NY2d 327, 335 [1990], *cert denied* 498 US 833 [1990]; *People v Mitchell*, 42 AD3d 758, 760-761 [2007], *lv denied* 9 NY3d 963 [2007]).

County Court did not abuse its discretion by precluding defendant from demonstrating that he spoke with an accent by offering a voice exemplar without subjecting himself to cross-examination. Due to the ease with which distinctive voice characteristics can be exaggerated or falsified, it is within a trial court's sound discretion to prohibit a defendant from offering an exemplar of his or her voice (*see People v Scarola*, 71 NY2d 769, 777-779 [1988]). Testimony established that defendant spoke with an accent, and any probative value the voice exemplar might have provided was outweighed by its potential to mislead the jury or unfairly prejudice the prosecution (*see id.* at 776). Further, the victim's identification of defendant was based on his appearance and clothing rather than his speech; the victim testified that he heard defendant speak only a few words (*see People v Wongshing*, 245 AD2d 186 [1997], *lv denied* 91 NY2d 978 [1998]; *People v Whitmore*, 190 AD2d 703, 704 [1993], *lv denied* 81 NY2d 978 [1993]).

Defendant also contends that the jury's verdict was not supported by the weight of the evidence. In analyzing this claim, "we consider, first, whether a different verdict would not have been unreasonable and, if so, we then 'must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (*People v Battease*, 74 AD3d 1571, 1575 [2010], *lv denied* 15 NY3d 849 [2010], quoting *People v Romero*, 7 NY3d 633, 643 [2006]). Here, defendant and Castellano testified that the sole purpose of their visit to the store was to collect payment for stolen cigarettes that, together with the third passenger, they had sold to the victim earlier that day. They further testified that no gun was used and that defendant did not enter the store. Based on this testimony, a different verdict would not have been unreasonable (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Beverly*, 74 AD3d 1480, 1481 [2010], *lv denied* 15 NY3d 802 [2010]).

However, the victim, the driver, and the third passenger denied that any transaction involving stolen cigarettes took place. Instead, according to the victim, Castellano pulled a gun after he and defendant entered the store, and defendant put on gloves before he took money from the cash register and several packages of a certain brand of cigarettes from the shelves. The driver and third passenger testified that they had not visited the store earlier that day, and that, when defendant and Castellano returned to the vehicle after the alleged robbery, they were carrying cigarettes and appeared to be in a hurry. Viewing the evidence in a neutral light and according deference to the jury's resolution of the "classic credibility issue" posed by the conflicting testimony (*People v Allen*, 13 AD3d 892, 894 [2004], *lv denied* 4 NY3d 883 [2005]; *see People v Bleakley*, 69 NY2d at 495), we conclude that the verdict was consistent with the weight of the evidence (*see People v Moyer*, 75 AD3d 1004, 1006 [2010]; *People v Rosa*, 57 AD3d 1018, 1020 [2008], *lv denied* 12 NY3d 762 [2009]).

Defendant was not, as he claims, unfairly prejudiced by a prosecutorial comment during summation, as the remark was "within the broad latitude permitted to the prosecutor in responding to defense counsel's summation" (*People v Wilhelm*, 34 AD3d 40, 54 [2006] [internal quotation marks and citations omitted]). During summation, defense counsel asked why, if defendant and Castellano had just used a pellet gun in a robbery, they did not conceal it in the vehicle's trunk at the same time they put some cigarettes there after leaving the store. The People stated that defendant and Castellano put the gun in the

car's passenger compartment because they were not yet done using it. In the context of all the evidence, this comment was a fair response to defense counsel's question (*see People v Marks*, 6 NY2d 67, 77 [1959], *cert denied* 362 US 912 [1960]; *People v Greene*, 13 AD3d 991, 993 [2004], *lv denied* 5 NY3d 789 [2005]). Moreover, the comment was isolated and closely followed by appropriate curative instructions (*see People v Romero*, 7 NY3d 911, 912-913 [2006]; *People v Greene*, 13 AD3d at 993). Accordingly, defendant was not deprived of a fair trial.

Finally, we are unpersuaded by defendant's claim that his sentence is harsh and excessive. In view of his criminal history and the nature of the crime, we perceive no abuse of discretion or extraordinary circumstances that would justify disturbing the sentence imposed by County Court (*see People v Sudler*, 75 AD3d 901, 906 [2010]; *People v Elliot*, 57 AD3d 1095, 1097 [2008], *lv denied* 12 NY3d 783 [2009]).

Mercure, J.P., Malone Jr., Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.