[980 NE2d 937, 957 NYS2d 272]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL WALKER, Appellant.

Argued October 16, 2012; decided November 19, 2012

**POINTS OF COUNSEL**

*Legal Aid Bureau of Buffalo, Inc.,* Buffalo (*Kristin M. Preve, David C. Schopp* and *Barbara J. Davies* of counsel), for appellant. The weapon and statements were obtained in violation of appellant's federal and state constitutional rights to be free from unreasonable searches and seizures and should have been suppressed. (*Arizona v Gant,* 556 US 332; *South Dakota v Opperman,* 428 US 364; *Colorado v Bertine,* 479 US 367; *Illinois v Lafayette,* 462 US 640; *Florida v Wells,* 495 US 1; *People v Galak,* 80 NY2d 715; *People v Wilburn,* 50 AD3d 1617; *People v Schwing,* 13 AD3d 725; *People v Iverson,* 22 Misc 3d 470; *United States v Caseres,* 533 F3d 1064.)

*Frank A. Sedita, III, District Attorney*, Buffalo (*Ashley R. Small* and *Donna A. Milling* of counsel), for respondent. Defendant's federal and state rights to be free from unreasonable searches and seizures were not violated. (*Miranda v Arizona*, 384 US 436; *People v Evans*, 65 NY2d 629; *People v Gomcin*, 8 NY3d 899; *Cady v Dombrowski*, 413 US 433; *South Dakota v Opperman*, 428 US 364; *United States v Caseres*, 533 F3d 1064; *Colorado v Bertine*, 479 US 367; *United States v Ramos-Morales*, 981 F2d 625, 508 US 926; *United States v Coccia*, 446 F3d 233, 549 US 1149; *United States v Jensen*, 425 F3d 698.)

## OPINION OF THE COURT

SMITH, J.

Having decided to arrest defendant for driving with a revoked license, a police officer also decided to impound the car he was driving. The officer did not inquire whether defendant's passenger, who was not the registered owner of the car, was licensed and authorized to drive it. We hold that such an inquiry was not constitutionally required. We also hold that the officer's search of the car after he decided to impound it was a valid inventory search.

## I

Defendant was indicted for criminal possession of a weapon in the second degree. At a suppression hearing, a state trooper testified that he stopped the car defendant was driving because the woman in the passenger seat (later identified as defendant's girlfriend) was not wearing a seatbelt. The trooper asked for defendant's license and registration; defendant provided the registration and an identification card, but not a license, and a computer check showed that defendant's driver's license had been revoked. The name on the registration was not that of either defendant or his passenger; according to evidence at the suppression hearing, the registered owner was defendant's sister.

The trooper decided to arrest defendant and to impound the car. Before the car was towed away, the trooper conducted what he described as an inventory search—a search in which "we go through the vehicle for any valuables and we have to write them down on a certain form." In the course of the search, he discovered a handgun on the floorboard.

The trooper testified that the search was done pursuant to a written policy of the New York State Police; he described the

policy in general terms, but no copy was offered in evidence. The People did offer a completed "VEHICLE INVENTORY" form that the trooper had filled out, showing that, in addition to the handgun, he had recovered "MISC ITEMS" from the trunk and "PAPERWORK" from the glovebox, and that the contents of the trunk and glovebox had been returned.

Defendant's motion to suppress the gun was denied. Defendant then pleaded guilty, without waiving his right to appeal. The Appellate Division affirmed (*People v Walker*, 88 AD3d 1287 [4th Dept 2011]). A Judge of this Court granted leave to appeal (18 NY3d 887 [2012]), and we now affirm.

## II

■ Defendant argues that the state trooper acted unreasonably when he decided to impound and search the car without inquiring whether defendant's girlfriend was licensed and authorized to drive it. We hold that no such inquiry was necessary.

When the driver of a vehicle is arrested, the police may impound the car, and conduct an inventory search, where they act pursuant to "reasonable police regulations relating to inventory procedures administered in good faith" (*Colorado v Bertine*, 479 US 367, 374 [1987]). Here, the trooper testified that it is state police procedure to "tow the vehicle" if the operator's license "is either suspended or revoked" and the registered owner is not present. We hold this to be a reasonable procedure, at least as applied to this case, where no facts were brought to the trooper's attention to show that impounding would be unnecessary.

Neither defendant nor his girlfriend asked the trooper if the girlfriend could drive the car, or told him that she had a driver's license and the owner's permission to drive it. The trooper was not required, as a matter of constitutional law, to raise the question, or to initiate a phone call to the owner. To impose such a requirement on police in such situations would not only create an administrative burden, but would involve them in making (and the courts in reviewing) difficult decisions in borderline cases. If a person present claims to have the owner's permission to drive, must the police take her word for it? If the owner is called and does not answer immediately, must police wait for a call back? It is reasonable for the police to institute clear and easy-to-follow procedures that avoid such questions.

The issue in this case is a variant of the many that can arise when police arrest the driver of a vehicle, and must decide

whether to impound and search the vehicle, or to permit other arrangements. While our Court has apparently never considered a question factually close to this one, somewhat similar facts have produced a number of rulings from a number of courts, not all of them consistent. The leading treatise on the law of searches and seizures summarizes the cases in this way:

> "There is a considerable body of authority that when the arrestee specifically requests that his car be lawfully parked in the vicinity of the arrest or that it be turned over to a friend, the police must honor this request. Several other cases hold or suggest that the police must take the initiative with respect to other apparent alternatives, such as permitting a licensed passenger to take custody of the car or lawfully parking the car at the scene, or at least that they must determine from the arrestee what disposition he wishes when he is competent to decide the matter. On the other hand, there are decisions which specifically reject such notions; it is said that officers are not required to take time out from their immediate purpose to allow their suspect to put his affairs in order and that an arresting officer has no mandatory legal duty to advise an arrestee of any administrative regulation authorizing the release of his automobile to a third party" (3 Wayne R. LaFave, Search and Seizure § 7.3 [c] at 618-621 [4th ed 2004] [footnotes and internal quotation marks omitted]).

We make no attempt to answer all the questions that may be raised in such cases. We hold only that the seizure of the car in this case was not unreasonable.

### III

■ We have held that, even where a vehicle has been lawfully impounded, the inventory search itself must be conducted pursuant to "an established procedure" that is related "to the governmental interests it is intended to promote" and that provides "appropriate safeguards against police abuse" (*People v Galak*, 80 NY2d 715, 716 [1993]; *see also People v Johnson*, 1 NY3d 252 [2003]; *People v Gomez*, 13 NY3d 6 [2009]). Defendant argues that the inventory search in this case failed to meet this requirement. We reject the argument.

Defendant's argument focuses on several alleged deficiencies in the proof relating to the inventory search: the written policy

that governed the search was never produced; the state trooper's description of the policy was very vague; and the descriptions of the returned property on the inventory form—"MISC ITEMS" and "PAPERWORK"—would be of limited usefulness in the event the car's owner claimed that some of her property was missing. These criticisms are not without force. Certainly, it would be better for a prosecutor seeking to prove the existence of a written policy to put a copy of the policy into evidence. On the other hand, defense counsel could have demanded that the policy be produced to help her cross-examine the trooper. She did not do so.

When a car has been lawfully impounded, the reasonable expectation of the person who was driving it that its contents will remain private is significantly diminished. In such a case, the driver presumably expects the police to find whatever is in the car. *Galak*, *Johnson* and *Gomez* establish that this does not give the police carte blanche to conduct any search they want and call it an "inventory search." The police must follow a reasonable procedure, and must prepare a "meaningful inventory list" (*Johnson*, 1 NY3d at 256). But it would serve little purpose for courts to micromanage the procedures used to search properly impounded cars. The United States Supreme Court implicitly recognized as much in *Bertine* by upholding as constitutionally valid a search producing what a trial court had found to be a "somewhat slipshod" inventory (479 US at 369; *see id.* at 383 [Marshall, J., dissenting] [describing the inventory's deficiencies]). The inventory here, while not a model, was sufficient to meet the constitutional minimum.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur.

Order affirmed.