People v Craddock (2025 NY Slip Op 01016)

People v Craddock

2025 NY Slip Op 01016

Decided on February 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 20, 2025

CR-23-2246
[*1]The People of the State of New York, Appellant,
v
Brandon Craddock, Respondent.

Calendar Date:October 18, 2024

Before:Egan Jr., J.P., Clark, Ceresia, Powers and Mackey, JJ.

Emmanuel C. Nneji, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for appellant.
Elizabeth M. Corrado, Public Defender, Kingston (Carly Burkhardt of counsel), for respondent.

Egan Jr., J.P.
Appeal from an order of the County Court of Ulster County (Bryan Rounds, J.), entered September 28, 2023, which granted defendant's motion to suppress evidence.
In the early morning hours of September 23, 2022, state troopers patrolling the New York State Thruway in the Town of Ulster, Ulster County, pulled over a 2011 Kia Soul for speeding. The troopers decided to tow the Kia because no one in the car could legally drive it, and a loaded handgun was recovered when one of the troopers conducted an inventory search of the vehicle. Defendant, the driver of the Kia, and his two passengers were charged in an indictment with criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Defendant moved, as is relevant here, to suppress the handgun contending that the inventory search departed from State Police procedures and was invalid. Following a suppression hearing in July 2023, County Court agreed and granted that aspect of defendant's motion. The People appeal.
The proof at the suppression hearing included the testimony of the trooper who conducted the inventory search, his bodycam footage of the stop and its aftermath, the original and amended vehicle impound and inventory record generated by the trooper, and the personal property record forms listing the items found on the persons of defendant and the codefendants. This proof reflected that the Kia was stopped after it was observed traveling 92 miles per hour in a 65 mile-per-hour zone on the Thruway and that, during the ensuing stop, it was learned that no one in the vehicle had a valid driver's license. The trooper proceeded to ticket defendant for various Vehicle and Traffic Law violations and advise him that, although no one was going to be arrested, the Kia needed to be towed because no one in the vehicle could legally drive it away. It was a dark, rainy night, and the trooper testified that his supervisors did not want vehicles left on the side of the road for longer than necessary and that he would have rejected any "request[ ] to have somebody pick up the car from so many miles away" rather than towing it. The plan was therefore for the Kia to be towed and for its three occupants to ride in the tow truck to the impound lot and await the arrival of someone who could pick up them and the vehicle. Prior to that, however, the trooper needed to do an inventory search of the Kia pursuant to State Police policy, and he told defendant as much.
The trooper's testimony and his bodycam footage detailed what he found during that search and how, at 2:26 a.m., he opened the glove compartment and a loaded Springfield XD 9 millimeter handgun fell out. The trooper paused his search to render the gun safe by locking the slide to the rear and asked defendant and the other occupants of the Kia whose gun it was; none of them answered. The trooper then continued the inventory search to its completion a few minutes later, and the bodycam footage reflected that [*2]he found, in the trunk, a reusable grocery bag that contained clothing and, on the back seat, a small bag that he looked through. The Kia's occupants were taken into custody due to the weapon and, at 2:39 a.m., one of them asked the trooper to retrieve two cell phones, earbuds and a pair of sunglasses from the vehicle before it was towed. The Kia was already being hoisted onto the bed of the tow truck by that point and, when the tow truck operator was approached by the trooper with the passenger's request, the tow truck operator disengaged the winch and opened the driver's side door of the Kia. The trooper went around the back of the vehicle and opened the door on the passenger's side and, with the assistance of the tow truck operator, found the sunglasses, earbuds and one cell phone. The trooper did not locate the second phone that was purportedly in the vehicle, but took the other items requested by the passenger. The Kia was then towed, and its three former occupants were transported to the State Police barracks for processing. The testifying trooper left his bodycam on for the next several hours and, while the camera was facing defendant and the vehicle's other occupants, it remained on and recorded conversations reflecting that the trooper was preparing paperwork relating to defendant and the other occupants of the Kia during that time.
Defendant concedes that the initial stop of the Kia, which occurred after the troopers observed it traveling well over the posted speed limit, was lawful, and he does not dispute that neither he nor the two passengers possessed a valid driver's license (see People v Robinson, 97 NY2d 341, 350 [2001]; People v Johnson, 254 AD2d 500, 500-501 [2d Dept 1998], lv denied 93 NY2d 972 [1999]). He does, however, challenge the decision to tow the Kia and the procedures used to conduct and document the search of it.
Inventory searches of a motor vehicle are a recognized exception to the warrant requirement of the Fourth Amendment (see Colorado v Bertine, 479 US 367, 371-372 [1987]; People v Galak, 80 NY2d 715, 716 [1993]; People v Sullivan, 29 NY2d 69, 71-72 [1971]). They serve to "protect[ ] an owner's property while it is in the custody of the police; insur[e] police against claims of lost, stolen, or vandalized property; and guard[ ] police and others from dangerous instrumentalities that would otherwise go undetected" (People v Galak, 80 NY2d at 718; see People v Douglas, 40 NY3d 385, 388 [2023]; People v Gray, ___ AD3d ___, ___, 2025 NY Slip Op 00249, *1 [3d Dept 2025]; People v Rhodes, 206 AD2d 710, 711 [3d Dept 1994], lv denied 84 NY2d 1014 [1994]).[FN1] The loaded handgun that resulted in the charges against defendant and was the focus of his suppression motion was found during the search, and the key question here is whether the People met their burden of showing that this "inventory search was in accordance with procedure and resulted in a meaningful inventory list and that the primary objectives of the search were [*3]to preserve the property located inside the vehicle and to protect police from a claim of lost property" (People v Lee, 29 NY3d 1119, 1120 [2017] [internal quotation marks, brackets and citation omitted]). We agree with the People that they did so.
With regard to the procedure itself, the written State Police policy in evidence at the suppression hearing provided that the contents of an impounded vehicle must be "inventoried." It instructed troopers that "all vehicle compartments and closed containers that can be opened without causing damage" must be searched. The policy further stated that a trooper must then complete a "Vehicle Impound and Inventory Record" and file it by the "completion of [the trooper's] tour." The policy also required the trooper to give a copy of the inventory record to the registered owner if present and, if not, to either leave a copy in the vehicle or give it to the operator. We agree with County Court that this inventory search policy was reasonably "designed to meet the legitimate objectives of the search while limiting the discretion of the officer in the field" (People v Briggs, 21 AD3d 1218, 1219 [3d Dept 2005], lv denied 5 NY3d 851 [2005]; accord People v Leonard, 119 AD3d 1237, 1238 [3d Dept 2014]).
As for whether the trooper who conducted the search of the Kia sufficiently complied with that policy, County Court determined that the trooper did not because "there [were] a great many items and effects within the vehicle that are not memorialized within the inventory form" and because the form "was not filled out until some many hours — if not days — after the search was conducted." Although the suppression court's findings of fact "are to be accorded great deference," those findings do not warrant suppression here (People v Davis, 58 AD3d 896, 898 [3d Dept 2009]). With regard to the content of the form and amended form, the testimony of the trooper who conducted the inventory search, as well as his bodycam footage, reflects that he went through the entire vehicle and found the handgun and several other items of value. He listed the valuable items that remained in the vehicle on the inventory form, then amended that form to include a lighter he had initially forgotten to list. Other valuable items, like the cell phone, earbuds and sunglasses that one of the vehicle's occupants asked for, were removed at the occupant's request after the search was completed and appear to have been included on the forms listing the personal property in the possession of the vehicles' occupants rather than the inventory form (see People v Padilla, 21 NY3d 268, 272-273 [2013]; People v Blair, 45 AD3d 1443, 1444-1445 [4th Dept 2007], lv denied 10 NY3d 838 [2008]). The trooper's testimony and the bodycam footage of his search do not suggest that the other items remaining in the vehicle were particularly valuable or posed any risk to the public, and "[t]he omission of [such] items from the inventory report does not render the inventory search [*4]invalid" (People v Kabia, 197 AD3d 788, 790 [3d Dept 2021], lv denied 37 NY3d 1162 [2022]; see People v Walker, 20 NY3d 122, 127 [2012]; compare People v Jones, 185 AD3d 1159, 1162 [3d Dept 2020] [police department policy required that vehicle be " 'completely inventoried' "]). As a result, we conclude that the trooper did prepare a meaningful list of the items remaining in the Kia that complied with State Police procedures.
As to the timing of the completion of the report, State Police policy directed that the impound and inventory record form detailing the items found during an inventory search be prepared prior to the "completion of [the trooper's] tour," and the trooper stated that he believed he prepared that form "[a] short time later when we were back at the barracks" and did so from memory, listing the handgun, various paperwork and a bag with clothing. He admitted that he did not remember that exact timing for a fact and might have completed the form later, but was sure that he completed it, as well as an amended form listing a cigarette lighter shaped like a handgun that he had found in the Kia but left off of the initial form, prior to the preliminary hearing which occurred on October 3, 2022. It is unsurprising that the trooper could not remember whether he had completed the inventory form by the end of his shift given that the suppression hearing took place 10 months after the search. Assuming, without deciding, that he failed to complete the form before the end of his shift as required by State Police policy, however, he did generate a meaningful list of the vehicle's contents and, notably, could have refreshed his memory of what he found during the search by reviewing his own bodycam footage before preparing the form (compare People v Kabia, 197 AD3d at 790, with People v Galak, 80 NY2d at 720 [five-hour delay in creating inventory report, in conjunction with lack of written search procedure and lack of record showing what property was kept in car or returned to vehicle occupants, rendered search unreasonable]). Similarly, while the trooper did not recall whether he provided a copy of the inventory form to the owner of the vehicle or defendant as required by State Police policy, he did remember that the owner had been contacted and notified that the vehicle had been towed (compare People v Leonard, 119 AD3d at 1239-1240).
The foregoing were "minor deviation[s] from procedure" under the circumstances of this case "and did not undermine the reasonableness of the limited search," particularly because "there was no indication that the police were using the procedure as a pretext to search for incriminating evidence" to begin with (People v Keita, 162 AD3d 610, 610 [1st Dept 2018], lv denied 32 NY3d 1065 [2018]; compare People v Galak, 80 NY2d at 720). It is not the role of either County Court or this Court to "micromanage the procedures used to search properly impounded" vehicles and, as the record leaves no question both that the towing [*5]and inventory search of the Kia were justified and that the ensuing list of the vehicle's contents sufficiently complied with State Police policy to meet the constitutional minimum, defendant's motion to suppress should have been denied in its entirety (People v Walker, 20 NY3d at 127).
Clark and Ceresia, JJ., concur.
Mackey, J. (dissenting).
We respectfully dissent. We agree with the majority, and County Court, that the trooper's decision to impound the vehicle and inventory its contents was appropriate. We also agree that the State Police inventory search policy is reasonable. However, deferring to County Court's factual determination that the trooper failed to comply with that policy in significant ways, we would affirm its order suppressing the property seized from the vehicle.
"All warrantless searches presumptively are unreasonable per se, and, thus, where a warrant has not been obtained, it is the People who have the burden of overcoming this presumption of unreasonableness" (People v Jimenez, 22 NY3d 717, 721 [2014] [quotation marks, brackets and citations omitted]). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement" (Riley v California, 573 US 373, 382 [2014] [citation omitted]). One such exception is an inventory search of an impounded vehicle, which "is exactly what its name suggests, a search designed to properly catalogue the contents of the item searched" (People v Johnson, 1 NY3d 252, 256 [2003]). "Three specific objectives are advanced by inventory searches: protecting an owner's property while it is in the custody of the police; insuring police against claims of lost, stolen, or vandalized property; and guarding police and others from dangerous instrumentalities that would otherwise go undetected" (People v Galak, 80 NY2d 715, 718 [1993] [citations omitted]; see Florida v Wells, 495 US 1, 4 [1990]). Thus, "the hallmark of an inventory search" is "a meaningful inventory list" (People v Johnson, 1 NY3d at 256). To demonstrate the constitutionality of an inventory search, the People bear the burden of proving that the trooper who conducted the search did so in accordance with "established police agency procedures" (People v Cardenas, 79 AD3d 1258, 1260 [3d Dept 2010] [internal quotation marks and citations omitted], lv denied 16 NY3d 857 [2011]; see People v Douglas, 40 NY3d 385, 389 [2023]).
The procedure at issue here required the trooper to 1) complete a written inventory record of the items taken from the vehicle by the end of his shift and 2) provide a copy of the inventory "to the registered owner, if present . . . [; otherwise,] give the copy to the vehicle's operator or leave it in the vehicle for the owner." The People failed to prove that the trooper here complied with either of those requirements. As to when he completed the inventory form, the trooper initially testified that he believed he did so shortly after the search "when [he] was back [*6]at the barracks," but later conceded that it could have been at his next shift.[FN2] He finally admitted that he could not "recall exactly when [it] was created" but that it must have been done before the preliminary hearing, which was held 10 days after the impoundment. Certainly, the record supports County Court's conclusion that the trooper did not complete the inventory report within the time mandated by the policy. As to the requirement that a copy of the report be provided to the owner or driver, the People submitted no proof of compliance whatsoever.
The majority excuses these failures as insignificant, but we disagree. Failure to complete an inventory report and provide it to the owner or driver in a timely fashion defeats the entire purpose of the report. Accordingly, in People v Galek (80 NY2d at 720) the Court of Appeals held an inventory search invalid where "[f]ive hours elapsed between the search and the listing of the property." The Court reasoned that "a list made so long after the search which does not indicate the disposition of each item removed is of little use either to the police or to the citizens who find themselves disputing the whereabouts of an item or the accuracy of the record" (id.). Similarly, this Court has ruled an inventory search to be invalid where the officer "prepared the inventory search form only from his memory after returning to the barracks and [testified] that a copy of the form was not provided to [the] defendant [owner]" (People v Leonard, 119 AD3d 1237, 1239 [3d Dept 2014]).
"[T]he factual findings of the suppression court are to be accorded great deference and should not be disturbed unless they are clearly erroneous" (People v Davis, 58 AD3d 896, 898 [3d Dept 2009]). We see no basis in the record to disturb County Court's factual findings here. Compounding the problem presented by the trooper not completing the inventory form promptly is the fact that he completed it "from memory." He conceded that, at some point within the 10 days following the search, he had to amend the inventory record to add a silver handgun-shaped cigarette lighter because he "forgot" to include it initially. In addition to the handgun, the trooper's amended inventory form listed only a "bag with various clothing items," paperwork and the lighter. The body-worn camera footage admitted into evidence at the hearing, however, supports County Court's conclusion that many items in the vehicle were never memorialized. Although the majority opines that the omitted items do not appear to be "particularly valuable," the State Police policy did not grant the trooper discretion to make that determination and we agree with County Court that the trooper's failure to prepare a complete inventory renders the search invalid (see People v Jones, 185 AD3d 1159, 1162 [3d Dept 2020]).
Inasmuch as the People failed to sustain their burden to establish that the trooper complied with the State Police policy regarding inventory searches (see People v [*7]Gomez, 13 NY3d 6, 11 [2009]; see also People v Leonard, 119 AD3d at 1239; see generally People v Gabriel, 155 AD3d 1438, 1441 [3d Dept 2017], lv denied 31 NY3d 1081 [2018]), in our opinion County Court properly granted defendant's suppression motion.
Powers, J., concurs.
ORDERED that the order is modified, on the law, by reversing so much thereof as granted defendant's motion to suppress physical evidence; motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Notwithstanding defendant's suggestion to the contrary, the circumstances of this case leave no doubt that the trooper properly had the Kia towed after it became clear that none of its occupants could legally drive (see People v David, 41 NY3d 90, 100-101 [2023]; People v Witt, 129 AD3d 1449, 1450 [4th Dept 2015], lv denied 26 NY3d 937 [2015]; People v Johnson, 254 AD2d 500, 501 [2d Dept 1998], lv denied 93 NY2d 972 [1999]; People v Rhodes, 206 AD2d at 711).

Footnote 2: There was no proof as to when the trooper's next shift was.