People v Carthen (2026 NY Slip Op 50302(U))

[*1]

People v Carthen

2026 NY Slip Op 50302(U) [88 Misc 3d 1232(A)]

Decided on March 9, 2026

County Court, Tompkins County

Miller, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on March 9, 2026
County Court, Tompkins County

People of the State of
New York

againstAlbert J. Carthen, Defendant.

Ind. No. 70256-25

Tasha Kates, Esq., Attorney for Defendant Carthen 
Matthew Van Houten, Esq., Tompkins County District Attorney

Scott A. Miller, J.

Defendant moves pursuant to CPL § 710.20 to suppress physical evidence recovered
from a vehicle following a traffic stop, impoundment, and inventory search. The Court conducted
a Mapp hearing on February 27, 2026, at which the People presented testimony from
Tompkins Deputy Sheriff Kiana Manuel and Ithaca Police Officer Kaitlyn Bliss together with
body-worn camera recordings and documentary exhibits. Having considered the testimony,
exhibits, and the arguments of counsel, the Court makes the following findings of fact and
conclusions of law.
On June 26, 2025, Officer Bliss received a license plate reader (LPR) alert indicating that the
registered owner of a light-blue Lexus SUV traveling west on East State Street had a suspended
driver's license. Officers located the vehicle and conducted a traffic stop based upon that
information.
Defendant Albert Carthen was identified as the driver. The passenger was identified as
Michael Gilmore. Officers confirmed that Defendant's license was suspended and placed him
under arrest for Aggravated Unlicensed Operation in the Second Degree. The passenger, Michael
Gilmore, was also detained after Bliss confirmed he had outstanding warrants. Because both
occupants were taken into custody and no licensed driver was available to take possession of the
vehicle, officers determined that the vehicle would be towed pursuant to the standardized written
IPD departmental Towing/Inventory policy procedure. The Ithaca Police Department's
standardized towing and inventory policy further required that once a vehicle is towed at the
request of an officer, the contents of that vehicle be inventoried and documented. The policy
authorizes officers conducting such an inventory to examine the passenger compartment, trunk,
and other accessible areas of the vehicle, including containers capable of being opened without
damage, in order to safeguard property, protect officers, and shield the Department from claims
of lost or stolen items. (Ex. 1)
Officer Bliss testified that the inventory search began only after the arrests had been
completed and the tow decision had been made. During the traffic stop, before the occupants
[*2]were arrested, an investigator (Inv. Robert Dupay) monitoring
the encounter by radio could be overheard stating, "They got Albert in that vehicle and that's a
good vehicle to try to get into, he's a gun toter." (Ex. 3 (Body-Worn Camera) at 3:33-3:40). The
body-worn camera recording (Ex. 3) reflects that Investigator Dupay arrived on scene at
approximately the 9:50 mark of the recording. At that time, passenger Michael Gilmore had
already been arrested and handcuffed on outstanding warrants, and Defendant Carthen had been
detained based upon the officers' confirmation that he was operating the vehicle while his license
was suspended. Prior to the commencement of the inventory search, Inv. Dupay can be seen
assisting Defendant Carthen in using his cellular telephone in an effort to contact the registered
owner of the vehicle. The recording further establishes that the decision to impound the vehicle
had already been made because both occupants were being taken into custody and no licensed
driver was available to assume control of the vehicle.
The entire inventory search process was recorded on body-worn camera. (Ex. 3). A written
inventory form was also filled out, noting any valuable items. (Ex. 2). The body-worn camera
recording further reflects that a gloved officer conducted the majority of the inventory search,
with several officers present and assisting at various points, including Inv. Dupay. During the
course of the inventory process, the narcotics and packaging materials at issue in this case were
discovered inside a Target shopping bag located in the trunk area. Inv. Dupay can be seen
examining the Target bag and its contents. At approximately the 29:42 mark of the recording,
Inv. Dupay also removed an interior hatch/trunk panel without the use of force; the recording
shows that a light tap caused the panel to fall free. No contraband or evidentiary material was
recovered from behind that panel. Officers also discovered a locked digital safe in the vehicle.
The safe was not opened during the inventory search. Instead, officers secured the safe and later
obtained a search warrant authorizing the search of its contents. 
A warrantless search is presumptively unreasonable unless it falls within a recognized
exception to the warrant requirement. When the driver of a vehicle is arrested, the police may
impound the car, and conduct an inventory search, where they act pursuant to "reasonable police
regulations relating to inventory procedures administered in good faith." People v. Walker, 20 NY3d 122,
125 (2012), quoting, Colorado v. Bertine, 479 US 367, 374 (1987). 
The threshold question, therefore, is whether the impoundment itself was proper. Here,
defendant was arrested for Aggravated Unlicensed Operation in the Second Degree, and the
passenger was arrested on outstanding warrants. With both occupants taken into custody, no
licensed driver was available to assume custody of the vehicle. Under these circumstances the
decision to tow the vehicle was objectively reasonable, and pursuant to IPD's standardized
written policy, mandatory. (Ex. 1). Once the vehicle was lawfully impounded, officers were
authorized to conduct an inventory search of its contents. The credible testimony, corroborated
by the body-worn camera recording (Ex. 3), established that the inventory search (1) began only
after the arrests and the decision to tow the vehicle had been made; (2) was conducted
substantially in conformity with the Ithaca Police Department's written inventory policy (Ex. 1);
(3) was recorded on body-worn camera; (4) resulted in the recovery of narcotics and packaging
materials located within a Target shopping bag in the readily accessible trunk area; and (5) was
documented on a completed inventory form (Ex. 2).
Defendant argues that the inventory search was merely a pretext for investigation, relying on
Inv. Dupay's radio comment suggesting that because "they got Albert in that vehicle and that's a
good vehicle to try to get into, he's a gun toter." (Ex. 3 at 3:33—3:40). That argument
[*3]fails. The constitutional validity of an inventory search turns
on the objective justification for the impoundment and the officers' compliance with standardized
procedures, not the subjective motives or investigative curiosity of individual officers. Where a
vehicle must be towed because its driver and all occupants have been arrested and no licensed
driver is available to take possession of it, an inventory search conducted pursuant to
standardized procedures remains constitutionally valid even if officers simultaneously suspect
that the vehicle may contain contraband. The Fourth Amendment analysis turns on the objective
justification for the impoundment, not the subjective curiosity of individual officers. In
People v. Robinson, 97 NY2d 341 (2001), the Court of Appeals stated, "[A]ll seven of
the Judges on this Court acknowledge the 'difficulty, if not futility, of basing the constitutional
validity of searches or seizures on judicial determinations of the subjective motivation of police
officers' (diss. opn. at 371). Thus, we are unanimous in our view that the primary motivation test
is not, and should not be, part of our State constitutional jurisprudence." U.S. Const., 4th Amend.
NY Const., Art. I, § 12.
The credible proof here establishes that the decision to stop the vehicle was based upon the
LPR showing a suspended registered owner, both occupants were validly arrested, and the
impound/tow decision was mandatory based upon the standardized policy (Ex. 1). In short, the
traffic stop, arrests, vehicle impound, and inventory search pursuant to the standardized policy
were independently and objectively reasonable and justified. Inv. Dupay's subjective comments
overheard on radio about searching Defendant's vehicle did not factor into the decisions by the
on-scene officers to effectuate the vehicular stop, arrest the occupants, and impound and
inventory search the vehicle. The registered owner was contacted but was unable to retrieve the
vehicle, and in any event her license was also suspended. The fact that Inv. Dupay may have
harbored subjective motives to search Defendant's vehicle is irrelevant to the 4th Amendment
analysis before this Court. Inv. Dupay was not an officer initially on scene and was not involved
in the decisions to stop the vehicle and arrest the occupants. Under these facts, the standardized
IPD Towing/Inventory policy required that the vehicle be impounded and inventoried. (Ex.
1).
Accordingly, where a vehicle must be impounded because its driver and all occupants have
been lawfully arrested and no licensed driver is available to assume custody of the vehicle, an
inventory search conducted pursuant to standardized departmental procedures is constitutionally
valid even where officers simultaneously harbor subjective suspicions about what contraband the
vehicle might contain. People v. Walker, supra.; People v. Robinson,
supra.
The Court agrees with the Defendant that removal of the trunk panel by Inv. Dupay is not
contemplated nor is it in conformity with the Ithaca Police Department's standardized written
inventory search policy and therefore constitutes a deviation from that procedure. However, no
evidence was recovered as a result of that impermissible action. The narcotics at issue were
discovered in a Target shopping bag located in the readily accessible trunk area itself. Minor
deviations from standardized procedures do not require suppression where the inventory
otherwise serves its administrative purpose and the deviation did not produce the evidence
recovered. "Minor deviations" will not undermine the reasonableness of a properly authorized
inventory search and it is "not the role of [ ] this Court to 'micromanage the procedures used to
search properly impounded' vehicles" and this Court finds that IPD "sufficiently complied" with
its standardized policy in order "to meet the constitutional minimum." People v. Craddock, 235 AD3d
1105, 1109 (2025), quoting, People
v. Walker, 20 NY3d 122, 127 (2012). The panel removal does not invalidate the
otherwise lawful inventory search.
The locked digital safe discovered during the inventory search was not opened during the
inventory process. Officers instead secured the safe and properly obtained a judicial search
warrant authorizing the search of its contents. 
The Court therefore finds that the traffic stop was lawful, both occupants were validly
arrested, no licensed driver was available to assume custody of the vehicle, and the decision to
impound the vehicle pursuant to the Ithaca Police Department's standardized policy was
objectively reasonable. The ensuing inventory search was conducted in substantial conformity
with that policy, and the narcotics recovered from the trunk were discovered during the course of
that lawful administrative procedure. The People have therefore met their burden of establishing
the legality of the search. As such it is hereby,
ORDERED that defendant's motion to suppress physical evidence is
DENIED in its entirety; and it is further
ORDERED that the jury trial shall commence on July 6, 2026 at 9:00 a.m.
Sandoval, Ventimiglia, Molineux hearings will be held before jury
selection.
Ithaca, New York 
Dated: March 9, 2026Hon. Scott A. MillerTompkins County Court Judge